IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 29, 2008

Charles R. Fulbruge III
Clerk

No. 07-30258

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

EDGARDO REYES RODRIGUEZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:04-CR-293

Before KING, WIENER, and ELROD, Circuit Judges.

PER CURIAM:[*]

Edgardo Reyes Rodriguez pleaded guilty to conspiracy and drug charges. He appeals his sentence, arguing that the district court erred by enhancing his offense level for a managerial or supervisory role in the conspiracy under U.S.S.G. § 3B1.1(b). For the reasons discussed below, we affirm.

I. Background

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On June 30, 2005, Rodriguez and two co-defendants were charged in a superseding indictment with one count of conspiracy to import into the United States, to possess on board a vessel arriving in the United States, and to possess with intent to distribute, five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 963, and with one count of possession of five kilograms or more of cocaine on board a vessel arriving in the United States in violation of 21 U.S.C. §§ 955, 960(b)(1)(B), and 18 U.S.C. § 2. Rodriguez pleaded guilty to both counts without a plea agreement on February 13, 2006.

A. Rearraignment

During his rearraignment, Rodriguez hesitated when the prosecutor read the factual basis of the plea. The factual basis provided in relevant part that an individual who worked for Rodriguez delivered an April 2004 shipment of about 128 kilograms of cocaine to Mississippi for distribution, and that Rodriguez "used five or more individuals as couriers and as distributors for narcotics." The proceedings paused while Rodriguez conferred with his lawyer. As counsel later explained at sentencing, Rodriguez objected to the representations in the factual basis that other people worked for him. Counsel reassured Rodriguez that he could contest the issue at sentencing without prejudice from his guilty plea. Rodriguez then affirmed the factual basis and entered his guilty plea under oath.

B. Presentence Report

The Presentence Report ("PSR") assessed a base offense level of 38 because the offense involved 150 kilograms or more of cocaine. Pursuant to U.S.S.G. § 3B1.1(a), the base offense level was increased by four levels because Rodriguez was an organizer or leader of a criminal activity that involved five or more participants or that was otherwise extensive. After a two-level reduction for acceptance of responsibility, Rodriguez received a total offense level of 40. That score, combined with a criminal history category of I, resulted in a guideline imprisonment range of 292 to 365 months.

Rodriguez filed several objections to the PSR. Specifically, he objected to

the four-level increase for his leadership role in the offense, to statements in the offense conduct section of the PSR suggesting that various people in the drug operation worked for him, to a sentence in the PSR stating that counsel agreed that the factual basis is accurate, and to the denial of a safety valve reduction.

C.  February 2007 Sentencing Hearing

At the sentencing hearing on February 7, 2007, Rodriguez reiterated his objections to the PSR, particularly the objection regarding the four-level enhancement for his leadership role in the offense.  He disagreed with those portions of the factual basis which indicated that certain individuals worked for him.  Rodriguez's counsel explained that he had not understood that Rodriguez's guilty plea would mean that he was "necessarily admitting that everything in that factual basis was accurate."  Counsel stated that "it didn't really dawn on me that it was going to become something real super-duper important until I got the presentence report."

In response, the government presented the testimony of Agent Timothy Suberville, the lead agent of the investigation.  Agent Suberville described Rodriguez as "the individual in the United States who was in charge of ultimately receiving a load of drugs and then redistributing them to a particular region."  The government then questioned Agent Suberville about specific events alleged in the factual basis.  Without objection from defense counsel, Agent Suberville identified more than five individuals in the conspiracy who worked for Rodriguez as transporters of drugs and money.

During the cross-examination of Agent Suberville, the district court interrupted and asked which part of the factual basis Rodriguez challenged, questioning whether the plea should be invalidated.  After conferring with Rodriguez, counsel answered that Rodriguez admitted that he had joined the conspiracy "a long time ago" as a diver who retrieved the drugs from the ships and that he had "progressed to becoming somebody who wound up being able to get the drugs and, basically, he gave them to somebody else after he got them off

the ship." "Then he got into a position where . . . he was given cocaine instead of money for doing his work as a diver," and he started selling cocaine. At this point, the district court stopped counsel and reset the hearing for March 7, 2007, to allow the parties to "talk a little more about this factual basis."

D. March 2007 Sentencing Hearing

At the March 2007 sentencing hearing, counsel explained that Rodriguez had questioned the accuracy of the factual basis during rearraignment regarding the statements that certain individuals had worked for him; that he had told Rodriguez, "perhaps erroneously," that his concerns related only to a sentencing issue, which would be resolved at sentencing; and that his failure to object to the factual basis on that ground would not "cause him any harm." The district court allowed Rodriguez to submit a proffer as to his role in the offense, which Rodriguez believed would establish that he was not a leader. According to the proffer, Rodriguez and others pooled their money to obtain and transport drugs to Mississippi for distribution, and Rodriguez progressed from a diver to a "holder of money" in the conspiracy.

After hearing counsel's proffer, the district court agreed that Rodriguez was not a leader but determined that Rodriguez had some managerial or supervisory responsibilities as he got more deeply involved in the transactions. The district court then asked whether the government wanted to present evidence to support a four-point enhancement. Although the government disagreed "somewhat" with Rodriguez's characterization of the facts, it stated that the proffer was "essentially correct." The government also reiterated that the "individuals who delivered certain drugs were directed and controlled by" Rodriguez, and said that it would defer to the district court to determine the appropriate enhancement level. The district court responded that a three-point enhancement was warranted in light of the extensive nature of the operation, of Rodriguez's pivotal role and increasing responsibilities therein, and of the court's determination that Rodriguez's relationship to his co-conspirators met the

manager or supervisor standard.

Because the district court expressly stated that it was relying on the proffer, and not on the factual basis, for its finding that Rodriguez "evolved into a managerial/supervisory role in his criminal enterprise," the court concluded that there was no need to resolve the dispute regarding the factual basis. The court partially granted Rodriguez's objection to the guideline calculation and sentenced him to 262 months in prison. He appeals.

## II. Discussion

Rodriguez contends that the district court erred by increasing his offense level for a managerial or supervisory role in the conspiracy under U.S.S.G. § 3B1.1(b) based on his "responsibilities" and on his "pivotal role" in the offense without finding that he supervised any of his co-conspirators. Alternatively, in the event that this court relies on the factual basis to support the enhancement, he argues that his counsel was ineffective at rearraignment in erroneously advising him to assent to the factual basis despite disagreements.

### A. Sentence Enhancement

U.S.S.G. § 3B1.1(b) provides that "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase [the offense level] by 3 levels." Whether Rodriguez was such a manager or supervisor "is a question of fact which we review under the clearly erroneous standard, giving due regard to the trial court's assessment of the credibility of the witnesses." United States v. Barreto, 871 F.2d 511, 512 (5th Cir. 1989). "A finding of fact is not clearly erroneous if it is plausible in light of the record viewed in its entirety." United States v. Sherrod, 964 F.2d 1501, 1506 (5th Cir. 1992).

Here, the district court's finding that Rodriguez met the manager or supervisor requirement was plausible in light of the record evidence. Although Rodriguez attempted in his proffer to characterize his relationship with his co-conspirators as more of a partnership, he nonetheless identified more than five

individuals whom the government claimed he directed or controlled. He also admitted that he progressed to a "holder of money" in the conspiracy from his early days as a diver. Based on this evidence, the district court did not enhance Rodriguez's sentence merely because he was "pivotal" to the conspiracy. Rather, the court found that Rodriguez "evolved into a managerial/supervisory role in his criminal enterprise."

Rodriguez concedes that during sentencing both he and the government named specific people who participated in the conspiracy. He argues, however, that his attempt to characterize his relationship with those people as co-equal rather than as hierarchical created a factual dispute which the district court failed to resolve in violation of Federal Rule of Criminal Procedure 32(i)(3)(B). That rule provides that the sentencing court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . ." FED. R. CRIM. P. 32(i)(3)(B).

What was at issue here was whether Rodriguez would receive a one-, a two-, a three-, or a four-point enhancement. After listening to Rodriguez's proffer, the district court agreed that Rodriguez was not a leader but determined that Rodriguez had some managerial or supervisory responsibilities as he got more deeply involved in the transactions.[1] The district court then asked whether the government wanted to present evidence to support a four-point

---

[1] The district court specifically stated:

I think based on what you have said I mean if it is all, in fact, factually correct, I would be inclined to agree with you that that does not demonstrate being a leader. But I think he did -- I don't know if blossoming is the right word, blossoming into a managerial/supervisory role . . . . I mean I see him as having some managerial/supervisory responsibilities as he got more deeply involved in these transactions.

enhancement.[2] The government stated that it disagreed "somewhat" with Rodriguez's characterization of the facts but that the proffer was "essentially correct." The government then reiterated that the "individuals who delivered certain drugs were directed and controlled by" Rodriguez, and explained that "as a matter of law[] enhancement of leadership role can be applied if the respondent establishes that among other things the defendant controlled one other criminally culpable participant in an extensive operation." Ultimately, however, the government deferred to the district court "[w]hether . . . to give [Rodriguez] one point, two points, three or four . . . ."

The district court first responded that a three-point enhancement was appropriate in light of the extensive nature of the operation, of Rodriguez's pivotal role and increasing responsibilities therein, and of the court's determination that Rodriguez met the manager or supervisor standard.[3] Then, without objection from defense counsel, the district expressly ruled, "[a]ll right, I am going to partially grant the objection to the guideline calculation. I find

---

[2] The district court inquired into the appropriate enhancement level as follows:

> Now, . . . I don't know what the government's possession [sic] is on it, but that's where I see it. I think you are correct, and what you represented does not constitute organizer or dealer, but it does constitute managerial/supervisory-type responsibilities and evolved into a period of time after he got initially involved sort of as you say as a diver. So I don't know how the government wants to . . . proceed. If you want to, if your are satisfied that the three-point enhancement, we could do it as a calculation as to where it puts him, or if you want to go ahead and put on evidence to support the four-point enhancement. It is really up to you . . . .

[3] Specifically, the district court explained:

> Well, I think there is no question it was a very extensive operation and a large operation in terms of volume of drugs that were being transported. And I do think Mr. Rodriguez's role was pivotal in that he was, he helped if that's the right term, had increasing responsibilities as he continued. And to say that I am satisfied that it is managerial/supervisory, and if the government is not interested particularly in pursuing that extra point, then . . . I would have three point enhancement, not two, because it is, the operation was very extensive.

that based on the proffer presented that Mr. Rodriguez is, in fact, evolved into a managerial/supervisory role in his criminal enterprise but not a leadership/organizer role." Based on the foregoing exchange, it is clear that the district court appropriately ruled on the "controverted matter" of the nature of Rodriguez's relationship to his co-conspirators as required by Rule 32(i)(3)(B).

Nor does the authority upon which Rodriguez relies undermine the district court's ruling. First, in United States v. Turner, this court upheld an enhancement under U.S.S.G. § 3B1.1 because the defendant "directed another in his drug trafficking activities." 319 F.3d 716, 725 (5th Cir. 2003). Similarly here, and contrary to Rodriguez's attempt to distinguish himself as a middleman, the evidence shows that Rodriguez was in charge of receiving drugs and money and of directing the activities of others in transporting and distributing them.

Second, in United States v. Lewis, this court invalidated such an enhancement because the evidence established that the defendants' roles were minor; there was no evidence that the defendants participated in meetings where arrangements were made or otherwise exercised control or authority over individuals involved with them in the methamphetamine trade. 476 F.3d 369, 389 (5th Cir. 2007). In the present case, by contrast, the evidence indicates that Rodriguez assumed a pivotal role in directing the drug and money transporting activities of his co-conspirators as he took on increasing responsibilities and progressed from a diver to a "holder of money" in the transactions. Accordingly, the district court's finding that Rodriguez was a manager or supervisor under U.S.S.G. § 3B1.1(b) was not clearly erroneous.

B. Ineffective Assistance of Counsel

Alternatively, Rodriguez alleges that his counsel was ineffective at rearraignment in erroneously advising him to assent to the factual basis despite his disagreements with portions concerning various people working for him. The district court explicitly stated, however, that it was relying on the proffer, and

not on the factual basis, for its finding that Rodriguez was a manager or supervisor; and this court, too, has reached its determination on the enhancement issue without reliance on the factual basis. As a result, Rodriguez was not bound by the factual basis and cannot show any prejudice arising from his attorney's performance. See Strickland v. Washington, 466 U.S. 668, 687 (1984) (holding that a defendant must show prejudice resulting from counsel's deficient performance to prevail on an ineffective-assistance claim).

## III. Conclusion

Finding no clear error in the district court's application of U.S.S.G. § 3B1.1(b) to Rodriguez's sentence, we AFFIRM.