# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————

No. 16-10879

————

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

SHANDA RENEE HAWKINS,

Defendant–Appellant

————

Appeal from the United States District Court
for the Northern District of Texas

————

United States Court of Appeals
Fifth Circuit

**FILED**

August 3, 2017

Lyle W. Cayce
Clerk

Before JOLLY and ELROD, Circuit Judges, and RODRIGUEZ,* District Judge.

XAVIER RODRIGUEZ, District Judge:

Appellant Shanda Renee Hawkins pled guilty to conspiracy with intent to distribute a controlled substance, and received a four-point organizer or leader enhancement and a two-point criminal livelihood enhancement, among others. She challenges these two enhancements on appeal, along with the substantive reasonableness of her sentence. For the following reasons, the judgment below is AFFIRMED.

---

* District Judge of the Western District of Texas, sitting by designation.

No. 16-10879

## BACKGROUND

Hawkins pled guilty to conspiracy with intent to distribute a controlled substance (methamphetamine) in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B). The probation office prepared a presentence report (PSR), indicating that Hawkins was accountable for 770,061.9 kilograms of marihuana equivalent, which resulted in a base offense level of 38. Through a number of enhancements and reductions, the probation office assessed a total offense level of 49, which was reduced to 43, the maximum Guideline offense level. For present purposes, Hawkins received two relevant sentencing enhancements. First, she received a four-level enhancement for being an organizer or leader of the conspiracy. *See* U.S.S.G. § 3B1.1. Second, she received a two-level enhancement for committing the offense as part of a pattern of criminal conduct engaged in as a livelihood. *See* U.S.S.G. § 2D1.1(b)(15)(E). Given her total offense level and Criminal History Category II, the Guidelines recommended life imprisonment, which was reduced to 480 months to reflect the statutorily authorized maximum sentence.

Hawkins objected to the PSR, challenging the two relevant enhancements. Hawkins argued that she was not an organizer or leader of the conspiracy, as her involvement in it was based mostly on her romantic involvement with several co-conspirators. Hawkins also argued that there was insufficient evidence to show that she engaged in the offense as part of a pattern of criminal conduct engaged in as a livelihood.

The district court overruled the objections, adopted the PSR's findings of fact (subject to certain changes in an Addendum), and granted the Government's motion for a downward departure. The district court sentenced Hawkins to 240 months of imprisonment to be followed by 4 years of supervised release. Hawkins objected to the reasonableness of her sentence under 18 U.S.C. § 3553(a) and filed a timely notice of appeal.

No. 16-10879

**DISCUSSION**

This Court has jurisdiction pursuant to 18 U.S.C. § 3742(a) as a defendant's appeal of a final sentence. On this appeal, Hawkins challenges the district court's application of two sentencing enhancements, along with the substantive reasonableness of her sentence.

## I. Challenges to the Application of Sentencing Enhancements

### a. Standard of Review

Where, as here, an argument is preserved in the district court, this Court reviews "the application of the Guidelines *de novo* and the district court's factual findings—along with the reasonable inferences drawn from those facts—for clear error." *United States v. Gomez–Valle*, 828 F.3d 324, 327 (5th Cir. 2016) (internal quotations omitted). A district court's factual findings are not clearly erroneous so long as they are plausible in light of the record read as a whole. *United States v. Alaniz*, 726 F.3d 586, 622 (5th Cir. 2013).

When making factual findings at the sentencing stage, a district court may consider any information that "bears sufficient indicia of reliability to support its probable accuracy." *United States v. Zuniga*, 720 F.3d 587, 590–91 (5th Cir. 2013) (internal quotations omitted). "[A] [PSR] generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations required by the sentencing guidelines." *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007) (internal quotations omitted). As a result, a district court may adopt facts contained in a PSR without further inquiry, assuming those facts have an adequate evidentiary basis that itself is sufficiently reliable and the defendant does not present evidence to the contrary. *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012). Where a defendant wishes to challenge sufficiently reliable facts contained in a PSR, the defendant carries the

3

burden of presenting rebuttal evidence showing that those facts are materially untrue, inaccurate, or unreliable. *Id*. Objections, unsupported by fact, generally do not carry this burden. *Id*.; *see also United States v. Rodriguez*, 602 F.3d 346, 363 (5th Cir. 2010) ("Because no testimony or other evidence was submitted to rebut the information in the PSR, the district court was free to adopt the PSR's findings without further inquiry or explanation.").

## b. The district court did not err in applying the organizer or leader enhancement.

The district court's application of the organizer or leader enhancement is affirmed. The Sentencing Guidelines provide that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase [the offense level] by 4 levels." U.S.S.G. § 3B1.1 (emphasis omitted). When determining whether this enhancement applies, a sentencing court should consider a number of factors, such as the exercise of decision-making authority, the recruitment of accomplices, the claimed right to a larger share of "the fruits of the crime," and the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, Application Note 4.

Hawkins does not dispute the size of the conspiracy, but argues that her involvement in it was based mostly on her romantic relationships with its "key players." She argues that she accompanied them and followed their orders without having decision-making authority or an entitlement to a higher share of the conspiracy's proceeds.

The district court adopted the PSR, which, aside from an objection, Hawkins did not contradict or impeach. The PSR states that Hawkins originally became involved in the conspiracy when she became romantically involved with co-conspirator RV Kerr. Yet Hawkins' role in the conspiracy did

not depend upon Kerr. Before Kerr was arrested, the PSR states that Hawkins maintained her own client base, including one client who purchased over 1,800 grams of methamphetamine from Hawkins in less than a year. And after Kerr's arrest, Hawkins continued selling methamphetamine on her own and in conjunction with other co-conspirators. Some of Hawkins' sales included methamphetamine packaged by Hawkins herself and sold from her own home.

Aside from simply selling, Hawkins was responsible for collecting payments, directing runners to deliver methamphetamine on behalf of herself and other co-conspirators, and recruiting drivers (who would transport her and her co-conspirators to drug transactions) and enforcers (who would collect drug debts). At Hawkins' direction, drivers acted as middle men between Hawkins and customers, delivering drugs and picking up cash. At least once, an enforcer acting on Hawkins' instructions took a supplier's vehicle as collateral for a drug debt.

As noted, Hawkins did not offer testimony or evidence to contradict the PSR, which otherwise bears a sufficient indicia of reliability. As a result, the district court was entitled to rely on the facts set forth in the PSR, and in doing so, made the plausible finding that Hawkins was a leader or organizer of the conspiracy. Hawkins' role in the conspiracy went far beyond that of the key players' girlfriend. She actively sold drugs—on her own and in conjunction with co-conspirators. She also directed and recruited a number of subordinates, who executed drug deals, picked up payments, acted as enforcers, and transported drugs belonging to her and her co-conspirators. On similar facts, this Court has previously affirmed a district court's application of the organizer or leader enhancement of § 3B1.1, and does so here as well. *United States v. Cantu-Ramirez*, 669 F.3d 619, 629–30 (5th Cir. 2012).

No. 16-10879

In sum, the district court's factual determination that Hawkins qualified as an organizer or leader under § 3B1.1 was not clearly erroneous because it was plausible in light of the record.

**c. The district court did not err in applying the criminal livelihood enhancement.**

The district court's application of the criminal livelihood enhancement is also affirmed. The Sentencing Guidelines provide for a two-level enhancement where "the defendant committed the offense as part of a pattern of criminal conduct engaged in as a livelihood." U.S.S.G. § 2D1.1(b)(15)(E).[1] The phrase "engaged in as a livelihood," which is defined in U.S.S.G. § 4B1.3, means that:

> (A) the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; and
> (B) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period (*e.g.*, the defendant engaged in criminal conduct rather than regular, legitimate employment; or the defendant's legitimate employment was merely a front for the defendant's criminal conduct).

U.S.S.G. § 4B1.3, Application Note 2; U.S.S.G. § 2D1.1, Application Note 20. Under the then-existing federal hourly minimum wage of $7.25, this enhancement would apply to Hawkins if the income she derived from the conspiracy totaled more than $14,500 in any twelve-month period.

As both parties correctly point out, this Court has seldom addressed the criminal livelihood enhancement. In the most recent case addressing it, this Court held that a district court did not commit clear error by applying the enhancement to a defendant who pled guilty to possessing stolen mail based

---

[1] This enhancement only applies if the defendant also received an Aggravating Role adjustment under U.S.S.G. § 3B1.1. Here, the organizer or leader enhancement, which Hawkins properly received for the reasons discussed above, is such an adjustment.

6

on the value of stolen checks and other amounts received, even though he did not successfully cash all of the stolen checks. *United States v. Quertermous*, 946 F.2d 375, 377 (5th Cir. 1991). In so holding, the Court reasoned that "district courts enjoy wide latitude in implementing the Sentencing Guidelines, particularly regarding findings of fact." *Id*. Several months prior to *Quertermous*, this Court reached a similar conclusion with respect to a defendant who pled guilty to possessing a credit card stolen from the mail. *United States v. Cryer*, 925 F.2d 828, 830 (5th Cir. 1991). In calculating the total amount of income attributable to the defendant as a result of his criminal livelihood, the district court counted $2,071.91 in credit card charges along with the $15,000 market value of a stolen car. *Id*. at 829. Again focusing on "the wide discretion district courts are afforded in implementing the sentencing guidelines, particularly the deference that they enjoy with respect to their findings of fact," this Court affirmed the district court's inclusion of the car's value in reaching the criminal livelihood threshold. *Id*. at 830.

Keeping in mind this wide discretion afforded to district courts, we now turn to Hawkins' arguments and the PSR. Hawkins argues that there is "no direct evidence" that she herself earned at least $14,500 over a one-year period due to the drug conspiracy. She argues that the PSR and its Addendum are based on "mere speculation and blanket assumptions" about the possible drug quantities and dollar amounts in which Hawkins dealt. She points out that Kerr's father received the majority of the drug proceeds and that her boyfriends supported her financially while she was involved in the conspiracy.

The PSR details Hawkins' many transactions with numerous suppliers. One supplier alone gave Hawkins and Kerr 195 kilograms of methamphetamine (valued at over $4 million) over a two-and-a-half year

period. Hawkins herself admitted in a post-arrest interview that she and Kerr dealt with "thousands and thousands of dollars each day," although Kerr's father received the majority of the proceeds. Hawkins had no other gainful employment during her four-year involvement in the conspiracy.

On the basis of these facts—again, unimpeached or contradicted by Hawkins—the district court did not clearly err by inferring that Hawkins derived $14,500 in income from the conspiracy during any of the four years in which she was involved in it. Nor did the district court err in finding that criminal conduct was her primary occupation. Hawkins did not hold a job outside of the conspiracy. Instead, she dealt in staggering amounts of methamphetamine, the value of which far exceeds the $14,500 annual threshold. Even if she kept only a miniscule fraction of the drug proceeds that she handled, she still would satisfy this threshold. And to the extent that Hawkins received financial support from her boyfriends, she admits that her boyfriends were her co-conspirators, whose incomes were derived from the drug conspiracy.

In short, the district court drew the reasonable inference that Hawkins derived at least $14,500 in any one-year period from her involvement in the conspiracy. As a result, the district court's factual determination that Hawkins qualified for the criminal livelihood enhancement under § 2D1.1(b)(15)(E) was not clearly erroneous and was instead plausible in light of the record.

## II.  Challenge to the Substantive Reasonableness of Hawkins' Below-Guideline Sentence

### a.  Standard of Review

After calculating the Guideline's recommended sentencing range, a sentencing judge should consider the factors set forth in 18 U.S.C. § 3553(a) to determine the particular sentence to impose. In reviewing a district court's

application of the § 3553(a) factors, appellate courts assess a sentence's substantive reasonableness on an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 50–51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). In conducting this review, this Court is highly deferential to the district court, "as the sentencing judge is in a superior position to find facts and judge their import under § 3553(a) with respect to a particular defendant." *United States v. Campos-Maldonado*, 531 F.3d 337, 339 (5th Cir. 2008) (citing *Gall*, 552 U.S. at 50–51).

This Court presumes that sentences within or below the calculated guideline range are reasonable. *United States v. Simpson*, 796 F.3d 548, 557 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 920, 193 L. Ed. 2d 807 (2016). To rebut the presumptive reasonableness of such a sentence, Hawkins must demonstrate that the sentence: "'(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors.'" *Id.* (quoting *United States v. Warren*, 720 F.3d 321, 332 (5th Cir. 2013)).

### b. Hawkins' sentence is not substantively unreasonable.

The Guidelines recommended a sentence of 480 months of imprisonment for Hawkins. The district court sentenced Hawkins to 240 months, granting the Government's motion for a downward departure. In so doing, the district court explained:

> A downward departure to 240 months is necessary to comply with the purposes set forth in paragraph 2 of Section 3553(a), that is, to reflect the seriousness of and to provide just punishment for the offense, promote respect for the law, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant.
>
> This sentence is a departure from the guideline range to avoid unwarranted disparities among the defendants, and grant

relief for the defendant's cooperation with the government, which prompted a motion under [§] 5K1.1 from the guidelines range.

In support of this reasoning, the district court knew of Hawkins' background and heard argument from her counsel and the Government regarding sentencing disparities between her and her co-conspirators.

On appeal, Hawkins reasserts her position that she was more of a complicit follower than an organizer or leader of the conspiracy, concluding that it is substantively unreasonable for her to be "on equal sentence footing with the very worst of them." Hawkins also points to her young age, lack of criminal history, and relatively low likelihood of recidivism to argue that her sentence is unreasonable.

Hawkins' reliance on these facts does not render her sentence substantively unreasonable but rather reflects her mere disagreement with it. *See United States v. Rodriguez*, 660 F.3d 231, 235 (5th Cir. 2011) ("A defendant's disagreement with the propriety of the sentence imposed does not suffice to rebut the presumption of reasonableness that attaches to a within-guidelines sentence."). Given the arguments of counsel at the sentencing hearing, along with the facts presented to the district court in the PSR, there is no evidence that the district court gave undue weight to the factors, failed to consider relevant factors, or committed clear error in balancing the factors. Accordingly, the district court did not abuse its discretion by imposing a 240-month sentence.

## CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.