# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-50297

United States Court of Appeals
Fifth Circuit

**FILED**
July 22, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

CHRISTOPHER SHAWN LANDRENEAU,

> Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before WIENER, STEWART, and WILLETT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Christopher Shawn Landreneau ("Landreneau") pled guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4). A week before sentencing, Landreneau moved to withdraw his guilty plea—the district court denied his motion to withdraw. At sentencing, the district court applied several sentencing enhancements. Landreneau appealed the application of two of those enhancements—a two-level enhancement for possessing child pornography with the intent to distribute and a five-level enhancement for the pattern of sexual abuse against minors. For the reasons given below, we AFFIRM the district court's denial of Landreneau's motion to withdraw and its application of the challenged sentencing enhancements.

No. 19-50297

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A. Facts

*The Underlying Facts and the Guilty Plea*

The Landreneau investigation spanned two states. Louisiana law enforcement officials first received an anonymous cyber-tip from the National Center for Missing and Exploited Children ("NCMEC") indicating that a Google mail ("Gmail") user attempted to distribute eighteen files of suspected child pornography on April 6, 2017. The flagged email account was OTESSArsenal@gmail.com. An open source database check for the Gmail account led to a Facebook account for a paranormal nonprofit company called OTESS. The Facebook page indicated Shawn Landreneau and Nadine Stanford, Landreneau's wife, as the owners of the company.[1] Additional open source database searches identified Shawn Landreneau as Christopher Shawn Landreneau, the defendant–appellant. The presentencing report ("PSR") notes that Landreneau has a series of tattoos on his body, including a tattoo of the word "Otess" on his back.

Louisiana law enforcement officials conducted additional open source database checks for Landreneau and found a Port Barre, Louisiana address associated with his name. Port Barre officials executed a search warrant for the residence, but found it empty. The owner of the rental property told the officers that Landreneau moved to Texas and where he believed Landreneau was employed.

Texas law enforcement then took over the investigation. After confirming his place of employment, the Texas Department of Public Safety ("DPS") obtained Landreneau's new address in Midland, Texas and contact

---

[1] During her testimony at Landreneau's sentencing hearing, Nadine Stanford clarified that she had not yet legally changed her surname to Landreneau.

information. DPS agents surveilled his residence and observed a car with Louisiana tags that was registered to Christopher Shawn Landreneau. DPS also conducted a criminal history database check that indicated that Landreneau was arrested for two counts of first degree rape in Louisiana on March 22, 2018 for alleged offenses in June 2017 and October 2017. Both parties indicate that these charges are still pending.

On July 30, 2018, DPS agents met with Landreneau at his job. Landreneau voluntarily went with the agents to the local DPS office where they asked him for his cell phone, an Apple iPhone S. According to his plea agreement, Landreneau gave written consent to the search of his residence, laptop, and personal and work cell phones. According to the PSR, "Landreneau attempted to take his phone from agents while pressing the home button. Agents knew it was possible to reset the phone to factory settings by pressing the home button several times, so they forcefully removed the phone from Landreneau." While Landreneau spoke with DPS agents at the DPS office, other agents went to Landreneau's residence and met with Landreneau's wife, Nadine. After the agents detailed the purpose of the visit, Nadine consented to their search of the residence wherein they recovered an Acer laptop and a Samsung cell phone. A search of those devices yielded no contraband. After his interview with the agents, Landreneau's laptop and Samsung phone were returned to him.

However, a search of his iPhone revealed 592 images of child pornography depicting lewd sexual acts of children under the age of thirteen, with some as young as five years old. In a post-*Miranda* interview, Landreneau admitted to downloading images of child pornography. He said that he used a website called "link share" and clicked on links containing child pornography and saved the images on his iPhone. He said that he only used the iPhone to

download images of child pornography and that he "gets excited when [he] look[s] at that."

On July 31, 2018, Landreneau was charged with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4). He was denied bail and was eventually indicted by a grand jury for one count of possession of child pornography. Landreneau pled guilty to that charge on October 16, 2018 and affirmed that he was pleading guilty because he was "in fact, guilty and for no other reason."

## B. Procedural History

The PSR reflected several recommended offense-level adjustments for sentencing. Starting at a base offense level of eighteen, the PSR calculated and recommended an increase of nineteen points which resulted in an offense level of thirty-seven. The PSR also recommended a three-point reduction for Landreneau's accepting responsibility, and for pleading guilty, which resulted in a final total offense level of thirty-four. Landreneau objected in writing to two of the recommended enhancements which accounted for seven of the nineteen points. The first was a two-level enhancement applied for the intended distribution of child pornography. The second was a five-level enhancement applied for engaging in a pattern of sexual abuse or exploitation of a minor. The basis for the five-level enhancement was two pending charges of first degree rape of victims under the age of thirteen, originating in Evangeline Parish, Louisiana on June 28, 2017 and October 5, 2017, respectively, that were noted in paragraphs twenty-seven and twenty-eight of the PSR.

After pleading guilty, the district court scheduled Landreneau's sentencing hearing to be held on January 15, 2019. Landreneau filed a motion to continue the deadline to object to the PSR on December 20, 2018, which was

No. 19-50297

granted. On that same day, the Court rescheduled the sentencing hearing for February 14, 2019.

*Motion to Withdraw Guilty Plea*

On February 7, 2019, a week before the rescheduled sentencing hearing, Landreneau moved to withdraw his guilty plea. He argued that "his plea was the result of not understanding the ramifications of his decision [to plead guilty]" because he learned from "other inmates that the conviction rate of the U.S. government is extremely high, and [he] would receive a longer sentence if convicted after a trial." After a February 14 motion hearing, Magistrate Judge Ronald C. Griffin recommended that the motion to withdraw be denied. Landreneau objected to the magistrate judge's report and recommendation, which was ultimately adopted by the district court on February 23. The PSR was then amended to reflect that Landreneau maintained his innocence. The amended PSR removed the three-point reduction which brought his total offense level back to a level thirty-seven.

*Sentencing Hearing*

The sentencing hearing was reset for March 27, 2019. At sentencing, the district court addressed two unresolved objections to the recommended sentencing enhancements, which were Landreneau's objection to the two-level enhancement for distribution of child pornography and the five-level enhancement for pattern of behavior of the sexual abuse or exploitation of a minor. On the distribution enhancement, Landreneau argued that the evidence was insufficient to support that enhancement because the draft email referenced in the cyber-tip was not provided in discovery. The government argued that the PSR sufficiently provided all of the evidence it had to substantiate the distribution enhancement. The district court agreed with the government and overruled Landreneau's objection to the distribution enhancement.

No. 19-50297

With respect to the pattern of abuse enhancement, Landreneau presented two witnesses, Holly Chapman and his wife, Nadine. Holly Chapman is Landreneau's personal friend and the mother of a child who is friends with Landreneau's daughter. Chapman's daughter, E.C., is one of the two teenagers who brought the rape allegations against Landreneau. Chapman testified that she does not believe that Landreneau raped her daughter because, in her view, Landreneau's ex-wife, April, spitefully coaxed her child into making false accusations of rape against Landreneau in response to her bitter divorce from Landreneau. When Nadine testified, she asserted the same position, that she did not believe the allegations of rape against Landreneau, brought by his own daughter T.L. and her friend, E.C. (Chapman's daughter), because April convinced them to say that Landreneau raped them.

The district court overruled Landreneau's objection to the pattern of abuse enhancement, stating that neither witness was credible because they did not accept that Landreneau was guilty for possessing child pornography, despite his guilty plea. In turn, the district court stated that his credibility determination of those witnesses in tandem with the collective evidence before it was enough to satisfy the preponderance of the evidence standard with respect to the pattern of abuse enhancement. When the district court asked Landreneau if he had anything else to say before the sentence was pronounced, Landreneau only said "I'm innocent" and limited any responses to any follow-up questions from the court to a bare "Yes, sir."

Ultimately, the district court declared a total offense level of thirty-seven, a criminal history category of I, and a guidelines range of 210 to 240 months of incarceration, five years to life of supervised release, and no eligibility for probation. The district court imposed a sentence of 210 months of incarceration that would run consecutively to any sentence imposed in the

6

No. 19-50297

pending Louisiana rape cases, a $40,000 fine, restitution in the amount of $31,000, and a mandatory assessment of $100.

Landreneau timely appealed the district court's denial of his motion to withdraw and the application of the distribution and pattern of abuse enhancements to his sentence.

## II.     STANDARDS OF REVIEW

This court reviews a district court's denial of a motion to withdraw a guilty plea for an abuse of discretion. *United States v. McKnight*, 570 F.3d 641, 645 (5th Cir. 2009). "A district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United States v. Mann*, 161 F.3d 840, 860 (5th Cir. 1998).

When a defendant objects to his sentence in the district court, this court reviews "the application of the Guidelines *de novo* and the district court's factual findings—along with the reasonable inferences drawn from those facts—for clear error." *United States v. Gomez-Valle*, 828 F.3d 324, 327 (5th Cir. 2016) (internal quotations omitted). "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." *Id.* (quoting *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005)).

## III.     DISCUSSION

**A. The district court did not abuse its discretion when it denied Landreneau's motion to withdraw his guilty plea.**

In *United States v. Lord*, we explained the contours of a defendant's ability to withdraw his guilty plea:

> A defendant does not have an absolute right to withdraw his guilty plea. [citing *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003)]. Instead, the district court may, in its discretion, permit withdrawal before sentencing if the defendant can show a "fair and just reason." [*Id.*] The burden of establishing a "fair and just reason" for withdrawing a guilty plea remains at all times with the defendant. *United States v. Still*, 102 F.3d 118, 124 (5th Cir. 1996).

7

No. 19-50297

> In considering whether to permit withdrawal of a plea, the district court should address the seven factors set forth in this court's opinion in *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984). These include: (1) whether the defendant asserted his actual innocence; (2) whether withdrawal would prejudice the Government; (3) the extent of the delay, if any, in filing the motion to withdraw; (4) whether withdrawal would substantially inconvenience the court; (5) whether the defendant had the benefit of close assistance of counsel; (6) whether the guilty plea was knowing and voluntary; and (7) the extent to which withdrawal would waste judicial resources. *Id.* "[N]o single factor or combination of factors mandates a particular result," and "the district court should make its determination based on the totality of the circumstances." *Still*, 102 F.3d at 124. The district court is not required to make explicit findings as to each of the *Carr* factors. *Powell*, 354 F.3d at 370.

915 F.3d 1009, 1014 (5th Cir. 2019).

Landreneau argues that the district court erred in denying his motion to withdraw his guilty plea because, in his view, the *Carr* factors collectively weighed in his favor. We disagree. As an initial matter, Landreneau only raises arguments concerning the first, second, third and sixth *Carr* factors, leaving the fourth and fifth, and seventh factors—three of the most persuasive factors in the district court's view—unmentioned. As for the factors he did contest, his arguments are not persuasive.

On the first and sixth *Carr* factors—whether the defendant asserted his actual innocence and whether the guilty plea was knowing and voluntary—Landreneau contends that he was not given the chance to fully explain his position at the motion hearing. He claims that he accidentally/mistakenly possessed the pornographic images—not knowingly possessed them—and that he gave his plea under duress from other inmates, *i.e.*, the plea was not knowing and voluntarily. But, with respect to the first factor, the district court reasonably assigned little weight to Landreneau's post-guilty-plea pledges of

innocence—regardless of whether they were fully articulated—because the "solemn declarations in open court" that accompany a guilty plea "carry a strong presumption of verity." *McKnight*, 570 F.3d at 649. Months before moving to withdraw his guilty plea, Landreneau declared his guilt under oath before the court, and the district court was in no way obligated to accept his novel protestations to the contrary as truth. Requiring district courts to do so would essentially convert withdrawal into an automatic right, which we will not do. *See United States v. Harrison*, 777 F.3d 227, 235 (5th Cir. 2015) ("[An] assertion of actual innocence alone, without supporting evidence, is insufficient to warrant allowing withdrawal under *Carr*.").

Landreneau's argument with respect to the sixth factor also fails. "For a plea to be knowing and voluntary, 'the defendant must be advised of and understand the consequences of the [guilty] plea.'" *United States v. Williams*, 116 F. App'x. 539, 540 (5th Cir. 2004) (per curiam) (quoting *United States v. Gaitan*, 954 F.2d 1005, 1011 (5th Cir. 1992)). A defendant's "statements that his plea was knowing and voluntary and that he understood the rights he was waiving 'create a presumption that in fact the plea is valid.'" *United States v. Washington*, 480 F.3d 309, 316 (5th Cir. 2007). Here, Landreneau alleges that other inmates pressured him into pleading guilty because of the United States' high success rate at securing convictions at trial and the likelihood that the imposed sentence after losing at trial would be higher than if he pled guilty. But the district court expressly warned Landreneau of this risk and advised him against relying on the advice of those he was in custody with before accepting Landreneau's guilty plea. In response to the court's warning, Landreneau responded, "I know." When the court further inquired, "Does that make sense?," Landreneau confirmed his understanding with a "Yes." As was the case in *Washington*, Landreneau confirmed that his plea was knowing and voluntary, acknowledged his understanding of the rights he was giving up, and

swore that he was pleading guilty because he was "in fact guilty, and for no other reason." Therefore, the presumption of a truthful guilty plea stands.

As to the second and third *Carr* factors—whether withdrawal would prejudice the government and the extent of the delay, if any, in filing the motion to withdraw—Landreneau's arguments also fail. As for the second factor, Landreneau makes a reasonable argument that the government raised only a general assertion of prejudice. But even if true, the district court still did not abuse its discretion as the second factor is not such a critical factor to the overall *Carr* analysis that would alone merit withdrawal. *See United States v. Gray*, 717 F.3d 450, 451 (5th Cir. 2013) (citing *Carr*, 740 F.2d at 345). Even if the district court's finding that the government would be prejudiced was incorrect, the district court still correctly found that the other *Carr* factors individually and collectively weigh against Landreneau.

Regarding the third *Carr* factor, our precedent shows that even assuming that only three months elapsed between Landreneau pleading guilty and moving to withdraw, the district court did not abuse its discretion in weighing this factor against him. *See, e.g., United States v. Harrison*, 777 F.3d 227, 237 (5th Cir. 2015) (weighing a five week delay against defendant); *United States v. Conroy*, 567 F.3d 174, 179 (5th Cir. 2009) (weighing a six week delay against defendant); *Carr*, 740 F.2d at 345 (weighing a 22-day delay against defendant).

Finally, as noted at the outset, Landreneau did not offer any arguments regarding the fourth, fifth, or seventh *Carr* factors; he has therefore forfeited any claim that the district court erred in weighing these factors in favor of the government. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").

In sum, the district court did not abuse its discretion when it denied Landreneau's motion to withdraw his guilty plea in light of its *Carr* analysis.

No. 19-50297

**B. The district court did not err when it applied the challenged sentencing enhancements.**

1. The Legal Standards Governing Sentencing Enhancements

"When making factual findings at the sentencing stage, a district court may consider any information that 'bears sufficient indicia of reliability to support its probable accuracy.'" *United States v. Hawkins*, 866 F.3d 344, 347 (5th Cir. 2017) (quoting *United States v. Zuniga*, 720 F.3d 587, 590–91 (5th Cir. 2013)). Findings of fact for sentencing purposes need only be established by a preponderance of the evidence. *United States v. Hebert*, 813 F.3d 551, 560 (5th Cir. 2015). Clear error will not be found on appeal if the district court's finding is plausible in light of the entire record. *Id.* Additionally, if there are two permissible views of the evidence, the factfinder's choice between them will not be deemed clearly erroneous. *Id.*

"[A] [PSR] generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations required by the sentencing guidelines." *Hawkins*, 866 F.3d at 347 (quoting *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007) ) (alterations in original). "As a result, a district court may adopt facts contained in a PSR without further inquiry, assuming those facts have an adequate evidentiary basis that itself is sufficiently reliable and the defendant does not present evidence to the contrary." *Id.* (citing *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012)). The defendant carries the burden of presenting rebuttal evidence to show that those facts within the PSR are materially untrue, inaccurate, or unreliable. *Id.* But, any objections, unsupported by facts, generally do not carry this burden. *Id.*; *see also United States v. Rodriguez*, 602 F.3d 346, 363 (5th Cir. 2010) ("Because no testimony or other evidence was submitted to rebut the information in the PSR, the district court was free to adopt the PSR's findings without further inquiry or explanation.").

11

2. Two-Level Distribution Enhancement

The Sentencing Guidelines add two offense levels if a defendant knowingly "engaged in distribution" of child pornography. U.S.S.G. § 2G2.2(b)(3)(F). A defendant has "knowingly engaged in distribution" if the defendant "(A) knowingly committed the distribution, (B) aided, abetted, counseled, commanded, induced, procured, or willfully caused the distribution, or (C) conspired to distribute." *Id.* cmt. n.2. "Distribution," in turn, "means any act . . . related to the transfer of material involving the sexual exploitation of a minor," and "include[s] possession with intent to distribute." *Id.* cmt. n.1.

In this case, the district court adopted the PSR's findings of fact and applied a two-level enhancement to Landreneau's offense level based on a finding that Landreneau intended to distribute child pornography. To support this finding, the PSR pointed to a cyber-tip provided to NCMEC by Google, which alerted that someone using Landreneau's email address[2] had uploaded eighteen child pornography images to an email. Landreneau does not provide any evidence to contradict this finding of fact, but he argues that his objection to the enhancement should have sufficed as an indicator that its application was improper. He also contends that the cyber-tip does not satisfy the preponderance of the evidence standard required of factual findings at the sentencing stage because the alleged email was not provided in discovery. Finally, he argues that the district court clearly erred because no additional evidence was heard on the reliability of the cyber-tip. We disagree.

First, as the government stated in its brief, the district court "acted well within its discretion" in relying on the PSR when it evaluated the distribution enhancement. To be sure, the tip provided in this case was the basis for the

---

[2] Landreneau does not dispute that he is the owner of the email address in question, nor does he claim that anyone other than he had access to or use of the email address.

search warrant executed against Landreneau, which Landreneau did not challenge. The tip did not come from an unidentified or questionable source: Google, pursuant to a federal statute, *see* 18 U.S.C. § 2258A, alerted NCMEC,[3] and in turn local law enforcement, based on Google's actual knowledge that a Gmail user had uploaded child pornography images to an email. *See Illinois v. Gates*, 462 U.S. 213, 233–34 (1983) (distinguishing anonymous or confidential tips from tips provided by informants known for their "unusual reliability" and "unquestionably honest citizen[s who] come[] forward with a report of criminal activity"). But even if the tip had come from a questionable source, we reiterate that it was later corroborated when a search of Landreneau's cell phone revealed 592 images of child pornography. A district court "has significant discretion in evaluating reliability," *United States v. Young*, 981 F.2d 180, 185 (5th Cir. 1992), and, here, the court had ample reliable evidence to conclude that Landreneau intended to distribute child pornography.[4]

Second, Landreneau incorrectly challenges the reliability of the NCMEC cyber-tip. The cases he relies on, pertaining to tips provided by unidentified informants and co-conspirators, are inapposite here. NCMEC cyber-tips

---

[3] The NCMEC was founded by John and Revé Walsh in 1984 as a private, non-profit organization after the abduction and murder of their son, Adam. *See* National Center for Missing and Exploited Children, *About NCMEC*, *available at* https://www.missingkids.org/footer/media/KeyFacts (last accessed July 13, 2020). It is now codified as the statutorily appointed reporting agency for conduct related to the sexual exploitation of minors in the CyberTipline Modernization Act of 2018 (P.L. 113-115 §2, Dec. 21, 2018, 132 Stat. 5287) (codified as 18 U.S.C. § 2258A).

[4] The record is silent as to whom the intended recipient of the email was, but even if Landreneau had only intended to send the email to himself, this would qualify as a "distribution" under the statute. *See* U.S.S.G. § 2G2.2(b)(3)(F) cmt. n.1 (defining "distribution" to mean "any act . . . related to the transfer of material involving sexual exploitation of a minor" without reference to the intended recipient of such a transfer). Though it is certainly possible that Landreneau did not intend to send the draft email at all, the district court's determination that, by the preponderance of the evidence, he likely did intend to distribute child pornography more than satisfies the "plausibility" test this court applies on review for clear error.

regularly form the basis of investigations in both this circuit and across the nation; their reliability have seemingly been rarely questioned. For example, in *United States v. Baker*, we affirmed a search warrant based off of an independently corroborated NCMEC cyber-tip provided by Yahoo! after police traced the IP address to the defendant. 538 F.3d 324 (5th Cir. 2008). Additionally, in *United States v. Reddick*, we held that the government did not conduct a separate search of the defendant's computer files, in violation of the Fourth Amendment, that was more expansive of the search conducted by Microsoft that compared the hash-values of child pornographic images uploaded by the defendant to SkyDrive to those hash-values known to the NCMEC. 900 F.3d 636, 639 (5th Cir. 2018).

We hold that an NCMEC cyber-tip generated by information provided to NCMEC by an internet company such as Google carries with it significant indicia of reliability. The CyberTipline Modernization Act of 2018, *supra* n.3, imbues such significant reliability by mandating "electronic communication service provider[s] [and] remote computing service[s]" to report illicit, questionable activity that comes through their servers. *See* 18 U.S.C. § 2258E(6) (definition of "provider" as utilized in 18 U.S.C. § 2258A(a)). Accordingly, we conclude that the district court did not abuse its discretion when applying the two-level distribution sentencing enhancement.

3. Five-Level Pattern of Abuse Enhancement

The Sentencing Guidelines add five additional offense levels if a defendant "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2(b)(5). "Any combination of two or more separate instances" of abuse or exploitation amounts to a pattern. *Id.* cmt. n.1. "Sexual abuse or exploitation" under § 2G2.2(b)(5) includes a state law offense that would have violated 18 U.S.C. § 2241 or § 2243 had the offense occurred within the federal government's special jurisdiction. *Id.* cmt. n.1. Title

18, § 2241(a) of the United States Code prohibits sexual acts with children under twelve, and § 2243(a) prohibits sexual acts with children between twelve and sixteen who are more than four years younger than the defendant.

Here, the district court imposed this five-level enhancement to Landreneau's sentence based on its finding that Landreneau had engaged in a pattern of abuse of minors. In recommending the imposition of this enhancement, the PSR included only the Bills of Information filed when Landreneau was previously arrested for the alleged rape of two girls under the age of thirteen, though he has not yet been tried on those charges.

A district court commits procedural error in sentencing a defendant based on information that does not have sufficient indicia of reliability. *Harris*, 702 F.3d at 229. "[O]ur precedent makes clear that the consideration of the fact of prior arrests, without more, is prohibited." *United States v. Johnson*, 648 F.3d 273, 277 (5th Cir. 2011); *see also United States v. Earnest Jones*, 489 F.3d 679, 681–82 (5th Cir. 2007); *United States v. Robert Jones*, 444 F.3d 430, 434 (5th Cir. 2006). "An arrest record is 'bare' when it refers . . . 'to the mere fact of an arrest—i.e.[,] the date, charge, jurisdiction and disposition—without corresponding information about the underlying facts or circumstances regarding the defendant's conduct that led to the arrest.'" *United States v. Windless*, 719 F.3d 415, 420 (5th Cir. 2013) (quoting *Harris*, 702 F.3d at 229) (alteration in original). "In contrast, an arrest record is not bare, and may be relied on, 'when it is accompanied by a factual recitation of the defendant's conduct that gave rise to a prior unadjudicated arrest and that factual recitation has an adequate evidentiary basis with sufficient indicia of reliability.'" *United States v. Foley*, 946 F.3d 681, 686 (5th Cir. 2020) (quoting *Windless*, 719 F.3d at 420).

A district court may consider conduct not resulting in a conviction (and even conduct resulting in an acquittal) when applying sentencing

enhancements as long as it finds that the conduct occurred by a preponderance of the evidence. *See United States v. Watts*, 519 U.S. 148, 152, 154–55 (1997) (holding that a sentencing court "may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law" (internal quotation omitted)). Landreneau argues that the district court could not have found that he committed the alleged rapes because it relied only on the Bills of Information to reach its conclusion, which this court has held is insufficient to satisfy the preponderance of the evidence standard. Landreneau is correct that reliance on a Bill of Information, or the fact of an arrest, alone may be insufficient. *See Johnson*, 648 F.3d at 276–77. While the information contained in the PSR alone was akin to a bare arrest record because it contained no facts beyond the elements of the charges, the dates of the conduct, and the initials of the victims, *see Foley*, 946 F.3d at 686, here, the PSR's report of the charges was not the only evidence before the district court that Landreneau assaulted two minor girls as charged.

In order to fully analyze the propriety of this enhancement, we look at not only what was included in the PSR but also at the full scope of the sentencing hearing. This includes the substance of Landreneau's objection to the enhancement, his rebuttal evidence vis-à-vis his two witnesses, and the government's rebuttal proffers. Landreneau offered two witnesses to demonstrate that the allegations made against him were false: one of the alleged victim's mothers, who self describes as Landreneau's best friend, and Landreneau's current wife. The women claimed that the alleged victims were lying when they made charges against Landreneau and that Landreneau's ex-wife was behind the false allegations.

Landreneau's counsel then summarized the testimony of one of the victims, EC, for the court. He, in an effort to discredit her testimony, described

No. 19-50297

EC's allegations that Landreneau sexually assaulted her every morning for three years, threatened to shoot or taser her if she told anyone, and struck her repeatedly. These are precisely the type of factual recitations of a defendant's conduct that render a pending charge sufficiently reliable to consider in sentencing. Whatever issues with relying on a mere proffer to increase a defendant's sentence are absent when it is the defendant who makes the proffer. *See United States v. Rodriguez*, 275 F. App'x 428, 431 (5th Cir. 2008) (affirming application of enhancement based on defendant's own proffer in an attempt to rebut the enhancement). Moreover, though Landreneau's counsel proffered details of only one victim's account, the pattern of abuse enhancement does not require multiple victims, only multiple instances of abuse. *See* U.S.S.G. § 2G2.2 cmt. n.1.

The Government then proffered, "that investigation included interviewing a half a dozen young girls to whom disclosures had been made about the sexual abuse and the sexual assault, including of the defendant's own daughter, for a period of seven years." Government counsel's statement without identifying which witness would testify to that information might lack enough indicia of reliability to be considered at sentencing. *See, e.g., United States v. Torres-Magana*, 938 F.3d 213, 217 (5th Cir. 2019) ("The court generally should not consider a defendant's unsworn objections and argumentation 'in making its factual findings.'"); *United States v. Robinson*, 101 F. App'x 389, 393 (4th Cir. 2004) (Michael, J., dissenting) (arguing that it was a violation of the Guidelines to rely on statements by counsel because they are not "relevant information" for resolving factual disputes at sentencing); *United States v. Harris*, 230 F.3d 1054, 1057 (7th Cir. 2000) (reversing application of enhancement because "the only suggestion in this record [of the conduct at issue] comes entirely from the mouth of the government's attorney" and "statements of counsel are not evidence"); *but see* U.S.S.G. § 6A1.3 cmt.

("Written statements of counsel or affidavits of witnesses may be adequate under many circumstances."). But the district court's conclusion that Landreneau committed a pattern of abuse is sound even without the Government's proffer.

After hearing the evidence, and taking into consideration evidence put before it prior to the sentencing hearing, the district court first determined that Landreneau's witnesses were not credible.[5] We defer "to the credibility determinations of the district court," *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008), and there is no evidence to suggest that the district court committed clear error in discrediting the women's testimony. Second, the court found that "preponderance of the evidence is met and exceeded" to show that Landreneau engaged in a pattern of abuse of minors. This finding aligns with our caselaw, which requires that a preponderance finding be based on more than a bare indictment. *Cf. United States v. Fields*, 932 F.3d 316, 320 (5th Cir. 2019) ("[G]enerally, a sentencing court 'may properly find sufficient reliability on a presentence investigation report which is based on the results of a police investigation,' especially where the offense report is detailed and includes information gathered from interviews with the victim and any other witnesses.") (quoting *United States v. Fuentes*, 775 F.3d 213, 220 (5th Cir. 2014)). The court showed as much when it stated:

> [t]he Court has heard the evidence and will state that in addition
> to the evidence, the Court has also reviewed the Presentence
> Investigation Report but also the Memorandum for Restitution,
> the statements from attorneys representing those victims. The --

---

[5] The court found that Landreneau's current wife was more credible than his "best friend," but noted that it had "some concern as to her credibility on other weighter [sic] issues" discussed during the sentencing hearing. For instance, Nadine was purportedly unaware of the email account that triggered the NCMEC alert and generally denied that her husband had a proclivity f or indecent images of minors.

and does take into consideration all of the evidence that I have, not just what we've heard today.

Because information before the district court corroborated the underlying conduct giving rise to the state charges of sexual assault, the district court did not err in relying on those charges to apply the pattern of abuse enhancement.

## IV.    CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.