United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 11, 2007**

Charles R. Fulbruge III
Clerk

*In the United States Court of Appeals*
*for the Fifth Circuit*

No. 05-10574

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

MARIO ALBERTO ORTIZ,

       Defendant - Appellant.

Appeal from the United States District Court
for the Northern District of Texas
No. 3:03-CR-329-15

Before BARKSDALE, BENAVIDES, and OWEN, Circuit Judges.

PER CURIAM:[*]

      Following a jury trial, Mario Ortiz was convicted under 21 U.S.C. § 846 of conspiring

to distribute cocaine and other controlled substances. Ortiz appeals that conviction,

contending that the district court erred in admitting evidence that was not provided to defense

counsel until trial had commenced. He also appeals his sentence on two bases, contending

that the length of the sentence is unreasonable and that the district court erred in applying

enhancements based on facts not found by the jury in calculating the advisory Sentencing

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Guidelines range.  We affirm the conviction and sentence.

**I**

Mario Ortiz was arrested at the home of Frederico Gonzales.  There is considerable evidence, not challenged by Ortiz, that Gonzales was a wholesale cocaine dealer in Dallas.  Ortiz was found at the time of his arrest asleep in a bedroom in which a money-counting machine and an armoire containing 14.9 kilograms of 92% pure cocaine were located.  Law enforcement agents also found at that time small amounts of cocaine in a pocket of Ortiz's trousers and in his truck, totaling about 4.1 grams.  There was evidence that on multiple trips over the span of several months, between April and September of 2003, Ortiz ferried cocaine from Laredo to Dallas and returned with the cash proceeds.  Ortiz's travels between Laredo and Dallas coincided with days on which telephone wiretaps indicated that cocaine was delivered to Gonzales.  On recordings of telephone conversations obtained with wiretaps, Ortiz was heard talking in code about cocaine and its delivery to Gonzales.  There was also evidence of multiple connections between Ortiz and Gonzales's cocaine supplier, Roberto Dominguez, and evidence that Ortiz crossed the border between the United States and Mexico on numerous occasions.

Following the jury's conviction of Ortiz, the district court sentenced him to 360 months in prison after finding the advisory Guidelines sentencing range to be 360 months to life.  We detail the evidence more fully below in our discussion of the issues Ortiz has raised on appeal.

**II**

2

Ortiz asserts that the district court erred in admitting defense exhibit 25, which consisted of a 26-page computer printout from Nextel Partners, Ortiz's cellular phone service provider, and four pages of typed and handwritten notes made by a Nextel employee, Vickie Culpepper, whom the Government called as a witness at trial. The exhibit reflected the physical location of cell towers that received and transmitted calls from Ortiz's mobile phone and purported to establish the dates, times, and routes of Ortiz's journeys between Laredo and Dallas. This allowed the Government to correlate Ortiz's travels with the dates on which Gonzales received cocaine.

Ortiz contends the exhibit should have been excluded based on the terms of the district court's pre-trial order. Ortiz asserts he was surprised by this evidence, his counsel did not have an adequate opportunity to prepare for cross-examination of Culpepper or to obtain a defense expert to counter her testimony, and that had Ortiz's counsel known of the contents of exhibit 25 and its significance before trial, counsel would have advised his client to seek a plea agreement.

Ortiz's trial commenced on Monday, April 19, 2004. The pre-trial order in effect at that time directed the Government to provide full discovery to the defense by March 5, 2004, to file lists of witnesses and exhibits to be offered at trial by March 26, and to provide marked copies of exhibits by the latter date. The order further provided that failure to list witnesses or exhibits would be grounds for exclusion of that evidence. A separate generic order entered in the case a few weeks before trial stated that exhibits not provided to the opposing party as required by the scheduling order would not be admitted "absent

3

compelling [c]ircumstances and just cause." The Government's exhibit list had no description of exhibit 25 but simply said "reserved." Ortiz contends that the Government could have requested the cell tower location information from Nextel well in advance of trial.

The Government's witness list did state that a custodian of records for Nextel Partners regarding Ortiz's mobile phone records would be called and disclosed that a Nextel engineer would testify as an expert about "cell tower locations and direct connect or push to talk capacity." Counsel for the defendant conceded in the trial court, and the record reflects, that the witness list identified Vickie Culpepper

The record also reflects that the Government supplied all the information contained in exhibit 25, except the physical location of the cell towers, in other Nextel phone records in accordance with the district court's scheduling order. On April 5, 2004, after the deadline for listing and exchanging exhibits had passed, the Government requested Nextel to provide the cell tower location information. Culpepper testified that she did not obtain possession of the records that had been requested until the morning of Monday, April 19, the day trial began, and she then faxed the 26-page computer print-out to the Government at approximately 7:00 a.m. The Government immediately gave a copy to the defense. The print-out contained codes from which the physical location of the cell towers could be determined. Culpepper began sorting through the information on Monday, April 19, and spent a day and a half preparing four pages of notes, some handwritten and some typed, that reflected her analysis of the cell tower locations. She gave this four-page document to the Government at lunchtime on Wednesday, April 21, and the Government immediately gave

4

it to defense counsel. Exhibit 25 is comprised of the 26-page printout and Culpepper's four pages of notes. The Government asked Culpepper to meet with defense counsel during the lunch break on Wednesday, April 21, which she did for approximately an hour, so that counsel could question her about the records and her work.

The district court held a hearing Thursday morning, April 22, at which the Government expressed its intent to offer exhibit 25 and to call Culpepper. The defense strenuously objected. The record reflects that defense counsel was aware before trial that the Government had or would obtain the cell tower locations and intended to call an expert witness about cell tower locations, but counsel made no effort to interview Culpepper, though her identity was known. The defense's only claim of surprise in the trial court was the lack of time to have a defense expert examine exhibit 25 to determine if the information was correct and to determine if Culpepper had accurately located the cell towers. The district court overruled the defense's objections, but allowed counsel to cross-examine Culpepper later in the day (Thursday, April 22) and to request additional time if counsel thought that was necessary after cross-examination. The defense did not request additional time after cross-examining Culpepper, nor did it move for a continuance. Trial concluded on April 30.

We review the district court's evidentiary rulings for abuse of discretion.[1] In exercising its discretion regarding sanctions for discovery violations, a district court should

---

[1]*United States v. Garza*, 448 F.3d 294, 296-97 (5th Cir. 2006).

consider: "(1) the reasons why the disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasability of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances."[2]  In fashioning a sanction, the district court should "impose only that sanction which is the least severe way to effect compliance with the court's discovery orders."[3]

The Government has offered no explanation for failing to produce the cell tower locations to Ortiz by the date set forth in the pre-trial order.  It is undisputed that the Government did not request the records until after the pre-trial order's deadline had passed and trial was but two weeks away.  However, there is no evidence to suggest that the Government acted in bad faith.  Without an improper motive, it is rare to sanction a party in a method as draconian as suppressing the evidence.[4]

Importantly, Ortiz has shown no actual prejudice attributable to the delay in receiving the information contained in exhibit 25.  Though he does claim that, had he known "the materiality and devastating nature of the cell tower information," he would have pleaded guilty and possibly received a reduced sentence, this argument does not withstand scrutiny. At trial, Ortiz did not deny that he made trips between Laredo and Dallas—he instead offered an alternative explanation, that he was selling and delivering horses to the conspirators. The cell tower locations were used to bolster the fact that the trips were made, and they merely

[2]*Id.* at 299-300.

[3]*United States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000).

[4]*Id.* at 299.

provided specific times and routes of these trips. Ortiz additionally fails to explain why he was precluded from pleading guilty once the information was provided to the defense.

Ortiz was on notice of the general nature of the evidence regarding cell tower locations: the Government's witness list included Vicki Culpepper as both a fact and expert witness from Nextel who would testify to "cell tower location" among other things. When questioned by the district court whether he was surprised by the evidence, Ortiz's counsel answered, "No I'm not surprised. I know they have Nextel records, and I know they have tower locations." Ortiz placed the calls, so he could anticipate what the evidence would eventually yield. Equally unavailing is Ortiz's complaint that he did not have sufficient time to hire an expert. He offers no argument that the information in exhibit 25 is incorrect in any way or that an expert would have provided a basis for impeaching or casting doubt on Nextel's records or Culpepper's determinations of tower locations. Moreover, there is significant evidence tying Ortiz to the conspiracy apart from the cell tower records.

Ortiz failed to move for a continuance. Following the discovery dispute, the district court explicitly gave Ortiz the opportunity to seek additional time if, after cross-examining Culpepper, the defense thought that necessary. A continuance would have provided an opportunity to discuss a plea, hire an expert, and generally review the documents and Culpepper's testimony in closer detail.

Ortiz argues that after the evidence regarding tower locations was admitted, he was "forced" to take the stand and perjure himself by concocting reasons for his trips between Laredo and Dallas. This, he asserts, led to an enhancement of his sentence. We will not

7

countenance such an argument.

The admission of exhibit 25 and Culpepper's testimony does not rise to an abuse of discretion in light of all the factors we are to consider.

### III

Ortiz asserts that the district court violated his constitutional rights by enhancing his sentence based on judge-found facts post-*Booker*.[5]  Following *Booker*, the Sentencing Guidelines are advisory, and judges may properly find facts relevant to sentencing.[6]  Thus Ortiz's claim is without merit, and his sentence is affirmed in this aspect.

### IV

Ortiz also argues that his sentence is unreasonable under 18 U.S.C. § 3553(a), which provides that the trial court should impose "a sentence sufficient, but not greater than necessary" to comply with the statutory reasons for punishment.  The district court sentenced Ortiz at the bottom of the advisory Guidelines range, and Guideline-range sentences are given "a rebuttable presumption of reasonableness."[7]

None of Ortiz's arguments renders the imposed sentence unreasonable.  He asserts that his sentence violates 18 U.S.C. § 3553(a)(6) and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Ortiz notes that some of his coconspirators received lower sentences.  This

[5]*United States v. Booker*, 543 U.S. 220 (2004).

[6]*United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005).

[7]*United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006).

argument ignores the fact that the coconspirators, unlike Ortiz, pleaded guilty. Second, section 3553(a)(6) is concerned with "avoid[ing] disparity among similarly situated defendants nationwide rather than disparity with . . . differently-situated co-defendant[s]."[8]

Ortiz presents a list of other facts or arguments that he contends render his sentence unreasonable. These include: (1) incarceration until he is well into his "golden years" is not necessary to satisfy the statutory factors considered in assessing punishments; (2) he had no prior criminal record; (3) he has a family with aging parents and two children who need his care; (4) he served honorably in the army; and (5) he had a stable work history. The district court properly considered the factors enumerated in 18 U.S.C. § 3353(a); the imposed 360-month sentence was not unreasonable.

* * * * *

For the foregoing reasons, Ortiz's conviction and sentence are AFFIRMED.

---

[8]*United States v. Duhon*, 440 F.3d 711, 721 (5th Cir. 2006).