# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 15, 2021

Lyle W. Cayce
Clerk

No. 20-50244

United States of America,

*Plaintiff—Appellee*,

*versus*

Jeffrey Clinton Michalik,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
No. 5:17-CR-347-1

Before Smith, Stewart, and Ho, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

A jury convicted Jeffrey Michalik of possessing child pornography. Michalik contends that the district court erred in denying his motion to suppress evidence and by admitting various pieces of evidence and testimony at trial, and he also asserts that the evidence was insufficient to sustain his conviction. Finding no reversible error, we affirm.

I.

Agents from the Department of Homeland Security, Homeland Security Investigations ("HSI"), executed a warrant at Michalik's house.

No. 20-50244

They did so because someone using an IP address associated with the house had accessed and downloaded child pornography from a website called "Amateur Lovers."

The HSI agents testified that they arrived early in the morning as Michalik was leaving for work.[1] They approached Michalik as he was getting into his car, informed him that he was not under arrest, and asked for his assistance entering the house pursuant to their warrant. The agents say that they swept the house and informed Michalik and his family that they were free to leave.

The agents then interviewed Michalik in one of their cars on the street near his house. During the interview, the agents asked Michalik whether he had viewed child pornography, and they assert that he admitted to having done so on his work laptop and that he said he used the same laptop to view pornography at home. The agents showed him images of child pornography, and he conceded that he recognized some of them. The agents testified that Michalik then drove to his office in his own car with agents in tow, stopping along the way at a McDonalds so an agent could use the restroom. At the office, Michalik led the agents to his laptop and signed a form consenting to its search. On the laptop, agents found child pornography.

Michalik's version of the events differs. He asserts that the agents gave him the ultimatum that either he lead them to the office and retrieve the laptop, or they would take him to jail. Michalik also contends the agents told him that they already had a warrant to search his laptop. Michalik doesn't contest that he signed the consent form but avers that the agents failed to tell

_____

[1] Many of the following facts are disputed, with Michalik's and the agents' accounts conflicting on material points. The district court repeatedly and consistently determined that the agents' version was credible.

2

him what he was signing or give him a choice whether to do so.

Michalik moved to suppress the evidence from his interview with the agents and the evidence from his laptop; the district court denied the motion. The jury convicted Michalik of possessing child pornography under 18 U.S.C. § 2252A(a)(5)(B). He appeals the denial of his motion to suppress, several admissions of evidence at trial, and the sufficiency of the evidence in support of his conviction.

## II.

Michalik appeals the denial of his motion to suppress the evidence of his statements to HSI agents and the evidence from his laptop. He contends that the government's failure to recite his *Miranda* rights necessitates the exclusion of his statements to the agents, and he avers that his consent to search his office laptop was not voluntary.

## A.

In reviewing the denial of a motion to suppress, we review findings of fact for clear error and legal conclusions *de novo*. *See United States v. Nelson*, 990 F.3d 947, 952 (5th Cir. 2021). We view "the evidence in the light most favorable to the party that prevailed in the district court," *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002), and we will uphold the district court's ruling on the motion "if there is any reasonable view of the evidence to support it," *see, e.g.*, *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994) (en banc) (quotation marks and citation omitted). "Our review is particularly deferential where denial of the suppression motion is based on live oral testimony because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Aguirre*, 664 F.3d 606, 612 (5th Cir. 2011) (cleaned up).

In general, "a suspect's incriminating statements during a custodial

interrogation are inadmissible if he has not first received *Miranda* warnings." *Nelson*, 990 F.3d at 955. A suspect is in custody "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Wright*, 777 F.3d 769, 774 (5th Cir. 2015) (quoting *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988) (en banc)). A suspect's custodial status "is an objective inquiry . . . that depends on the totality of the circumstances." *Id.* (cleaned up). Five factors are relevant: "(1) the length of the questioning; (2) the location of the questioning; (3) the accusatory, or non-accusatory, nature of the questioning; (4) the amount of restraint on the individual's physical movement; and (5) statements made by officers regarding the individual's freedom to move or leave." *Nelson*, 990 F.3d at 955.

B.

Regarding the first factor, the length of questioning, the HSI agents testified that Michalik's interview lasted from forty-five minutes to just over an hour. That's roughly consistent with Michalik's contention that the interview lasted "at least an hour." Although an interview length of one hour "weighs in favor of finding that it was custodial," *Wright*, 777 F.3d at 777, an hour-long interview, alone, doesn't render the questioning custodial. Indeed, "[w]e have previously rejected the broad proposition that an hour-long interview constitutes a *per se* custodial interrogation." *United States v. Gonzalez*, 814 F. App'x 838, 844 (5th Cir. 2020) (per curiam) (cleaned up).

The second factor—the location of the questioning—suggests that the interview was not custodial. Michalik sat in the passenger-side front seat of a police car on the street near his house. As in *Wright*, 777 F.3d at 777, the interview "took place close to the [suspect's] home, in a car subject to public scrutiny."

The third factor—whether the questioning was accusatory—indicates that the interview was not custodial. The district court found HSI agents DePaola and Juarez credible when they testified that the conversation was "cordial" and Michalik was "cooperative." As the district court noted, Michalik contested those characterizations, asserting that the agents called him a liar and made "disparaging and accusatory statements" about his family. The district court did not clearly err in its credibility determination in favor of the agents, and the third factor thus indicates that the interview was not custodial.

The fourth factor—the amount of restraint on the suspect's physical movement—also suggests that the interview was not custodial. Michalik contends that the presence of six to eight armed agents indicates that he was physically restrained. He also notes that agents escorted him outside to the car. The presence of armed agents, however, does not necessarily render an interview custodial.[2] The agents never handcuffed or otherwise physically restrained Michalik's movement.[3] Indeed, the district court found that the interview ended when Michalik "became frustrated with the agents' questioning." Moreover, the fact that Michalik's mother-in-law left to take his stepdaughter to school while agents were searching the house suggests that a reasonable person would have felt free to leave.

The fifth factor—whether officers informed the suspect of his freedom to leave—also supports a finding that Michalik was not in custody.

---

[2] *See, e.g.*, *Wright*, 777 F.3d at 771, 777 (determining that an interview was not custodial despite the presence of more than a dozen armed officers wearing bulletproof vests, several of whom had their guns drawn).

[3] *Cf. United States v. Ortiz*, 781 F.3d 221, 231–33 (5th Cir. 2015) (observing that singling out and handcuffing a suspect may "suggest to a reasonable person that he was not free to leave," but determining that the brief handcuffing of a suspect does not render an interview custodial *per se*).

Michalik contends now, as at his suppression hearing, that the agents failed to tell him he was free to leave. He also asserts that the other occupants of his house confirmed that the agents didn't inform Michalik that he could leave. On that contention, there is a dispute of fact. Agents DePaola and Juarez testified that they told Michalik "repeatedly" that he was not under arrest and was free to leave before the interview. The agents testified that both Michalik and his family appeared to understand what they were saying. Considering the divergent accounts, the district court made an explicit credibility determination that the agents' testimony was credible and reliable. The district court did not clearly err in its determination; thus, the fifth factor indicates that the interview was not custodial. Weighing the totality of the circumstances, the district court did not err in concluding that Michalik was not in custody.

### C.

Michalik also appeals the admission of evidence from his office laptop, averring that he did not voluntarily consent to its search. "A search conducted pursuant to consent . . . remains one of the well-settled exceptions to the Fourth Amendment's warrant and probable-cause requirements." *United States v. Rounds*, 749 F.3d 326, 338 (5th Cir. 2014). The government must show by a preponderance of the evidence that the suspect voluntarily consented to the search, and whether the consent was voluntary is a factual finding, reviewed for clear error. *Id.*

To determine the voluntariness of consent, the court assesses six factors: "(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found." *United*

*States v. Glenn*, 931 F.3d 424, 430 (5th Cir.) (cleaned up), *cert. denied*, 140 S. Ct. 563 (2019).

## D.

The first factor for determining whether consent to a search was voluntary—the voluntariness of the suspect's custodial status—favors the government. As previously discussed, the district court did not err in determining Michalik was not in custody and was informed that he was free to leave.[4]

The second factor—the presence of coercive police procedures—favors the government. Michalik avers that the agents used "coercive and misleading statements . . . to obtain the written consent" to access his laptop. Specifically, he asserts that he asked the agents whether they needed a warrant before searching his laptop and that they told him they already had a warrant. Agent DePaola, on the other hand, testified that that claim was "totally false." Michalik also contends that the agents threatened to take him to jail if he did not consent to the search of his laptop. Agent DePaola flatly disputed that claim too. The district court determined that the government agents were credible, and it did not clearly err in that finding.

The third factor—the extent and level of the defendant's cooperation with police—also supports the government. The district court determined that the "record in the case demonstrates that [Michalik] was cooperative with the agents during the drive to his work as well as in his office," and Michalik does not contest that characterization.

The fourth factor—the defendant's awareness of his right to refuse

---

[4] *See United States v. Soriano*, 976 F.3d 450, 455 (5th Cir. 2020) ("Voluntariness of custodial status turns on whether a reasonable person in the defendant's position would feel free to terminate the encounter.").

consent—favors the government, as well.  Agent DePaola testified that Michalik's leading the agents to his office to retrieve the laptop was "completely up to him," and that on "multiple occasions [DePaola] said it was voluntary and [she] thanked him for his cooperation."  She also testified that the agents told Michalik that "he could say no" to cooperating.  Michalik challenges the veracity of Agent DePaola's testimony, contending that there are discrepancies in her account, but a review of the record shows no material discrepancies; instead, it reveals only that DePaola had trouble recalling some details of her interaction with Michalik.  The district court determined that Agent DePaola's testimony was credible and also noted that the consent form Michalik signed included clear language informing him that he could withhold his permission.

The fifth factor—the defendant's education and intelligence—is undisputed and also favors the government.  Michalik was forty years old, had a high school education, and operated a small business, demonstrating that he had sufficient education and intelligence to consent voluntarily to the search.

The sixth and final factor—the defendant's belief that no incriminating evidence will be found—favors the government.  Indeed, Michalik told agents that, although he had viewed pornography on his laptop, he did not believe there was any such material stored on it.  With all six factors favoring the government, the district court did not err in determining that Michalik's consent to the search of his laptop was voluntary.

## III.
### A.

Michalik appeals the admission of several pieces of evidence and witness testimony.  We review evidentiary rulings for abuse of discretion, subject to harmless-error review.  *United States v. Jackson*, 636 F.3d 687, 692

(5th Cir. 2011). A district court "abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

Michalik asserts that the district court erred by admitting Exhibit 6B—a report showing that child pornography files on his laptop were actually accessed—because the government submitted it after the discovery deadline. In assessing discovery violations, the "district court commands broad discretion when deciding whether to impose sanctions." *United States v. Swenson*, 894 F.3d 677, 684 (5th Cir. 2018) (internal quotation marks and citation omitted). In determining whether to impose sanctions, a district court considers "1) the reasons why disclosure was not made; 2) the amount of prejudice to the opposing party; 3) the feasibility of curing such prejudice with a continuance of the trial; and 4) any other relevant circumstances." *United States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000).

The district court did not abuse its discretion in admitting Exhibit 6B after the discovery deadline. The report was not disclosed earlier because the government created it in response to an argument that Michalik raised on the first day of trial—that the government could not prove that the contraband files on the laptop had ever been opened. Moreover, the court recessed for two days to give Michalik and his computer forensic analyst time to review the report and adjust his defense strategy; thus, the court took steps to reduce the prejudice of the late admission. At the same time, the court determined that a continuance was untenable because it would inhibit the government's ability to call out-of-town witnesses who had already arrived for trial.

The government did not act in bad faith in seeking the report's late admission, and, where a party did not act with "an improper motive, it is rare to sanction a party in a method as draconian as suppressing the evidence." *United States v. Ortiz*, 213 F. App'x 312, 315 (5th Cir. 2007) (per curiam).

No. 20-50244

The court did not abuse its discretion by admitting Exhibit 6B into evidence.

B.

Michalik asserts that admission of Exhibit 6B was an abuse of discretion, contending that it is a summary under Federal Rule of Evidence 1006 and thus must have been made available for examination at a reasonable time and place.  The government contests that characterization, averring that Exhibit 6B is a forensic report, not a summary.  Reviewing the exhibit, it includes raw metadata, not anything amounting to a summary or chart.  We thus conclude that it is not a summary but instead a forensic report.

C.

Michalik asserts that the district court abused its discretion by allowing Adrian Linares, the government analyst who created the report in Exhibit 6B, to testify about its contents without being qualified as an expert witness under Federal Rule of Evidence 701(c).  Reviewing the record, it appears that Michalik consented to the government's calling of Linares as a lay witness as part of an agreement also to allow Michalik to call his own computer analyst as a lay witness to discuss what he saw on the government's report.

Even if the district court did err in failing to qualify Linares as an expert, any error was harmless.  "A nonconstitutional trial error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict."  *United States v. Lowery*, 135 F.3d 957, 959 (5th Cir. 1998) (quotation marks and citation omitted).  Where other testimony confirms wrongly admitted testimony, "the cumulative nature of the evidence militates toward the harmless error conclusion."  *United States v. El-Mezain*, 664 F.3d 467, 513 (5th Cir. 2011).

In addition to Linares, Special Agent Steve Nutt was admitted as an

10

expert witness. Nutt clarified and expounded on technical aspects of the forensic report on rebuttal that Linares had previously discussed. Because Nutt provided cumulative evidence, even if admitting Linares's testimony on technical aspects of the report was error, it was harmless. *See id.* Moreover, as we will discuss in our review of the sufficiency of the evidence, even were Linares's testimony excluded, the "evidence of guilt [is] overwhelming," so any potential error in admitting his testimony was harmless. *United States v. Gutierrez-Mendez*, 752 F.3d 418, 426 (5th Cir. 2014).

## D.

Michalik contends that Nutt's testimony about Exhibits 6 and 6B was improper rebuttal.[5] Michalik asserts that, through Nutt's testimony, the government was "improperly impeaching or explaining [its] own reports." The government avers that Nutt's rebuttal testimony was proper because Michalik discussed Exhibit 6B during his defense; specifically, Michalik's brother testified that Michalik's laptop sometimes played music when it was closed, suggesting that there could have been remote access that was actually responsible for the presence of the child pornography files. Because the files listed in Exhibit 6B were in the music folder, the government contends that Michalik opened the door to further discussion of the report on rebuttal.

"Whether to allow evidence in rebuttal is a matter within the trial court's discretion, reviewable only for an abuse." *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991). Although rebuttal "is not to be used as a continuation of the case-in-chief," *id.*, the district court has wide discretion and "may admit in rebuttal evidence which could have been received as part of the case-in-chief," *United States v. Brock*, 833 F.2d 519, 522 (5th Cir.

---

[5] Exhibit 6 is a report listing all child pornography files discovered on Michalik's laptop.

1987).  There is no abuse of that wide discretion here.

## IV.

### A.

Michalik asserts that the evidence was insufficient to convict him of knowing possession of child pornography.  "We review sufficiency of the evidence *de novo*."  *United States v. Smith*, 739 F.3d 843, 845 (5th Cir. 2014).  We "examine all evidence in the light most favorable to the verdict, and consider whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt."  *Id.* (internal quotation marks and citation omitted).  Moreover, the "assessment of the weight of the evidence and the determination of the credibility of the witnesses is solely within the province of the jury."  *United States v. Sanchez*, 961 F.2d 1169, 1173 (5th Cir. 1992).

The jury convicted Michalik of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  The evidence is sufficient to sustain a conviction under § 2252A(a)(5)(B) where "a rational juror could find beyond a reasonable doubt that [the defendant] (1) knowingly (2) possessed (3) material containing an image of child pornography (4) that was transported in interstate or foreign commerce by any means."  *Smith*, 739 F.3d at 845–46.  Michalik contests only the first element—knowledge.  "The knowledge requirement extends both to the age of the performers and to the pornographic nature of the material."  *Id.* at 848.

### B.

Michalik makes a number of contentions in his argument that the evidence was insufficient to prove that he knowingly possessed child pornography.  His central assertion is that, because others had access to his laptop at his place of work—coworkers, customers, and other business associates—the evidence was insufficient to prove that he knew there was child pornog-

raphy on his computer. A reasonable jury could easily conclude that Michalik had knowing possession because the origins of the investigation undercut his explanation: Agents initially searched his house because someone had accessed a child pornography website from an IP address associated with Michalik's house, not his office.

Michalik points out that there were other people living there who could have used his laptop. A reasonable jury could still conclude that it was Michalik who accessed the contraband because the HSI agents testified that he confessed to viewing and searching for child pornography and also admitted that he recognized some of the child pornography images that the agents showed him from the website in question. The jury was entitled to credit the agents' testimony over Michalik's denials. Indeed, the "jury retains the sole authority to . . . evaluate the credibility of the witnesses." *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012) (cleaned up). Given that evidence, a reasonable jury could easily find that Michalik knowingly possessed the child pornography on his laptop.

AFFIRMED.