# United States Court of Appeals for the Fifth Circuit

No. 22-51127

United States Court of Appeals
Fifth Circuit

**FILED**

May 17, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Seth Elred Perricone,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CR-95-1

Before Barksdale, Southwick, and Graves, *Circuit Judges*.

Per Curiam:[*]

Primarily at issue is whether the district court erred in applying an enhancement under Sentencing Guideline § 2G2.2(b)(5), finding Seth Elred Perricone "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor". Also at issue are claimed Fourth and Fifth Amendment violations, regarding statements he made to law enforcement on the day of his arrest. AFFIRMED.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-51127

I.

This case arises out of an internet child-pornography-sharing investigation that led law enforcement to an internet protocol (IP) address linked to Perricone's mother. Perricone lived with his parents (Perricone's residence). A magistrate judge on 24 January 2018 issued a search warrant for Perricone's person, vehicle, and residence.

He spoke at length on 25 January 2018 with law-enforcement agents at a USAA building (on the premises of his workplace) and at an FBI office. At the latter, Perricone took a polygraph examination, and he and the polygraph examiner prepared a written statement, in which he admitted he had downloaded child pornography. Perricone had an opportunity to make changes and signed the statement, despite his commenting that a defense attorney would have advised him against it.

Around the same time as the interview at USAA, other agents searched Perricone's residence. They discovered a report for a polygraph examination taken on 26 May 2009 and ordered by Perricone's defense counsel, relating to charges from 2009 for sexual assault of a minor. The report states that, after failing the examination, Perricone admitted verbally, *inter alia*, to penetrating the minor's vagina, as discussed *infra*.

After the polygraph examination at the FBI office, the agents questioned Perricone about: a child pornography "series" discovered at his residence (which he correctly identified); the above-discussed sexual-assault charges; and his daughter, to understand what, if any, danger he was to her. An agent then communicated with the United States Attorney's Office to explain the evidence revealed by the search and interviews. On that office's recommendation, the agents arrested Perricone. These events, including Perricone's spending approximately four hours at the FBI office and his subsequent arrest, occurred on the same day: 25 January 2018.

No. 22-51127

A second superseding indictment charged Perricone with six counts of distributing, and one count of receiving, child pornography, in violation of 18 U.S.C. § 2252A(a)(2), (b).  On 19 January 2022, Perricone filed his first suppression motion, asserting, *inter alia*:  his statements at USAA were obtained in violation of the Fifth Amendment because he was subjected to custodial interrogation without receiving *Miranda* warnings; and the statements at the FBI office were tainted due to the earlier violation.  *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966).  After an evidentiary hearing, at which Perricone did not testify, the district court ruled from the bench, and credited the agents' testimony, concluding:  "The interview [at USAA] was a non-custodial interview, and accordingly *Miranda* was not required at that point in time".  Therefore, the court denied the motion "[i]n all respects".

On 8 July 2022, three days before trial, Perricone filed his third motion *in limine*, asserting, *inter alia*:  his confession at the FBI office was involuntary; and the search warrant lacked probable cause for his person and vehicle.  Two days later (10 July 2022), he filed a second suppression motion, seeking to exclude any evidence discovered in violation of the Fourth Amendment.  He did not, however, identify the physical evidence he sought to exclude.

The motions were denied by written order on 11 July 2022.  In this same order, the court characterized his earlier finding relating to Perricone's above-discussed first suppression motion as his "not [being] in custody at any time prior to the actual arrest".

A jury convicted Perricone on all counts on 13 July 2022.  The presentence investigation report (PSR) included the recommended above-referenced, five-level enhancement under Guideline § 2G2.2(b)(5) for engaging in a pattern of activity involving the sexual abuse of a minor.  The

court overruled Perricone's objection to the enhancement and adopted the PSR. He received, *inter alia*, a within-Guidelines 360-months' sentence.

## II.

Perricone presents three issues: two related to his conviction; the other, his sentence. For the former, he asserts the court erred by denying his motions to exclude statements made at USAA and the FBI office because they were obtained in violation of the Fourth and Fifth Amendments. For the latter, he asserts: the court erred by relying on the 2009 polygraph-examination report's detailing his admission to sexually assaulting a minor; and there was not adequate evidence to corroborate the requisite two-or-more instances to constitute the required pattern of activity involving the sexual abuse of a minor. *See* Guideline § 2G2.2(b)(5) cmt. n.1 (defining "Pattern" as "any combination of two or more separate instances of the sexual abuse"). The Fourth and Fifth Amendment contentions are addressed first.

## A.

"When reviewing a denial of a motion to suppress evidence, this Court reviews factual findings for clear error and the ultimate constitutionality of law enforcement action *de novo*." *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014) (italics added). "The clearly erroneous standard is particularly deferential where, as here, denial of a suppression motion is based on live oral testimony . . . because the judge had the opportunity to observe the demeanor of the witnesses." *Id.* (alteration in original) (citation omitted). Additionally, our court views the evidence "in the light most favorable to the prevailing party, which in this case is the Government". *United States v. Zavala*, 541 F.3d 562, 574 (5th Cir. 2008) (citation omitted). Denial of a suppression motion is upheld "if there is any

reasonable view of the evidence to support it". *United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018) (citation omitted).

1.

"The Fourth Amendment commands that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.' The exclusionary rule provides the typical remedy for Fourth Amendment violations: suppression of the evidence at trial." *United States v. Mendez*, 885 F.3d 899, 909 (5th Cir. 2018) (alteration in original).

"We apply a two-step test to determine whether to suppress evidence under the exclusionary rule: first, we ask whether the good faith exception to the rule applies, and second, we ask whether the warrant was supported by probable cause." *Robinson*, 741 F.3d at 594. "The good faith exception to the exclusionary rule provides that evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible even if the affidavit on which the warrant was grounded was insufficient to establish probable cause." *Id.* (citation omitted). "If the good-faith exception applies, then we need not inquire whether probable cause existed, unless the case presents a novel question of law". *United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006) (citation omitted).

There are four instances in which the good-faith exception does not apply: "the issuing-judge was misled by information in an affidavit"; "the issuing-judge wholly abandoned his judicial role"; "the underlying affidavit is 'bare bones' ('so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable')"; or, "the warrant is so facially deficient . . . that the executing officers cannot reasonably presume it to be valid". *Id.* (alteration in original) (citation omitted). Perricone relies on the third instance: the affidavit was "bare bones", or "so lacking in indicia of

probable cause" (for his person and vehicle) that belief in the existence of probable cause was "entirely unreasonable". He maintains no objectively reasonable agent could have relied on the warrant in good faith because the IP address was used by multiple people.

"A bare bones affidavit contains wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause. Whether an affidavit is a bare bones affidavit is determined by a totality of the circumstances." *Robinson*, 741 F.3d at 597 (citation omitted).

The agent's affidavit at issue is not "bare bones". It fully explains, *inter alia*: the agent's knowledge and training concerning child pornography; information regarding the substance and location of storing child pornography; and the agent's investigation. The affidavit's investigation summary outlines, *inter alia*: the subpoena to the internet provider; police database results showing Perricone's living at the residence linked with child pornography; his criminal history, including his being charged (and later acquitted) of the sexual assault of a minor, and his ex-wife's reporting an alleged sexual assault of their 11-year-old daughter; and the agent's knowledge that software applications used to access child pornography can operate on desktops, laptops, smartphones, and tablets. (Therefore, as explained above, because the good-faith exception applies, we need not review for probable cause *vel non*.)

2.

Regarding Perricone's Fifth Amendment challenge, "[c]ustody determinations under *Miranda* present a mixed question of law and fact". *United States v. Rafoi*, 60 F.4th 982, 1002 (5th Cir. 2023) (citation omitted). As discussed *supra*, our court reviews the district court's "factual findings for clear error and legal conclusions, including whether *Miranda*'s guarantees

have been impermissibly denied, *de novo*". *Id.* (italics added) (citation omitted).

Perricone asserts: his statements at the USAA building were obtained in violation of the Fifth Amendment because he was subjected to custodial interrogation without *Miranda* warnings; and his statements at the FBI office were the product of a two-step strategy prohibited by *Missouri v. Seibert*, 542 U.S. 600 (2004), described *infra*. We turn first to the statements at the USAA building.

a.

"Custodial interrogations that necessitate *Miranda* warnings consist of questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Rafoi*, 60 F.4th at 1002 (citation omitted). "Custody for purposes of *Miranda* is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Id.* (citation omitted). "This Court employs a two-step inquiry to determine whether a custodial interrogation occurred. First, looking at the totality of the circumstances, the Court analyzes the defendant's freedom of movement. Next, it analyzes whether the questioning took place in an environment resembling the stationhouse questioning at issue in *Miranda*." *Id.*

i.

In reviewing the court's freedom-of-movement ruling, our court asks whether "a reasonable person would have felt he was at liberty to terminate the interrogation and leave". *Id.* at 1003 (citation omitted). Toward that end, courts look to factors including: "length of the questioning", "location of the questioning", "accusatory . . . nature of the questioning", "amount of restraint", and "statements made by officers regarding the individual's

freedom to move or leave". *Id.* "No one fact is determinative." *Id.* (citation omitted).

For the length of questioning, Perricone cites the agents' interview and arrest log showing: the interview process began at USAA at 10:15 a.m.; the agents and Perricone left USAA at 11:22 a.m.; and Perricone was introduced to the polygraph examiner at the FBI office at 12:02 p.m. Perricone includes the time travelling to the FBI office because, during this period, Perricone alleges he provided his computer password. The Government asserts the questioning ended in the USAA conference room after an hour, and the time exiting the building and traveling to the FBI office should not be included.

The court did not make a finding regarding the time of questioning but, as noted, did find the agents' testimony credible. Additionally, an agent testified Perricone provided his computer password while "chatting" outside the building, waiting on the agents' vehicle.

Viewing the evidence in the requisite light most favorable to the Government, the questioning lasted around an hour, ending in the USAA conference room. *See Robinson*, 741 F.3d at 594; *Zavala*, 541 F.3d at 574. An hour-long interview is not dispositive but does weigh in Perricone's favor. *E.g.*, *United States v. Wright*, 777 F.3d 769, 771, 777 (5th Cir. 2015) (weighing hour-long interview in favor of custody). Nevertheless, our court "has warned against overreliance upon the length of questioning because doing so injects a measure of hindsight into the analysis which [our court] wishes to avoid". *Rafoi*, 60 F.4th at 1003 (citation omitted).

For the location of questioning, Perricone asserts he: was escorted a quarter mile away from his work area at USAA by a USAA security officer to another USAA building; the room used in that building was small and

accessed with the security officer's badge; the agents were sitting near him; and the room's hallway window was "frosted".

In *Howes v. Fields*, the Supreme Court addressed an inmate's motion to suppress statements made without *Miranda* warnings in violation of the Fifth Amendment. 565 U.S. 499, 502–04 (2012). The Court rejected the inmate's assertion that he was in custody for which the circumstances were more restrictive than those at issue here, *i.e.*, the interview in *Howes* lasted "between five and seven hours", "the deputies . . . were armed", and one of the deputies used "a very sharp tone", even profanity. *Id.* at 515 (citation omitted). Notably, that the inmate "was interviewed in a well-lit, average-sized conference room, where he was not uncomfortable" weighed in favor of no custody. *Id.* (citation omitted). Similarly, Perricone's being interviewed in a conference room in a building on the premises of his workplace supports that "a reasonable person would have felt free to terminate the interview and leave". *Id.* (citation omitted).

Next, Perricone asserts the interview became increasingly accusatory because the agents: told him they had discovered child pornography; inquired about the ownership of electronics and files; and asked probing questions. On one hand, the agents told Perricone a federal search warrant was being served at his residence. *See United States v. Bengivenga*, 845 F.2d 593, 597 n.16 (5th Cir. 1988) (*en banc*) ("The *awareness* of the person being questioned by an officer that he has become the focal point of the investigation . . . may well lead him *to conclude, as a reasonable person,* that he is not free to leave, that *he has* been significantly deprived of his freedom". (emphasis in original) (citation omitted)). On the other hand, one agent testified it was a pleasant conversation. The court found Perricone "was talkative", "was cooperative", and "volunteered a lot of information". Perricone fails to show clear error in the court's findings or that the interview was argumentative or intimidating. *See Rafoi*, 60 F.4th at 1004. This factor

No. 22-51127

does not significantly favor either Perricone or the Government on account of the agents' informing Perricone of the search warrant. *See Bengivenga*, 845 F.2d at 597 n.16.

For the level of restraint, the court found:  no uniforms or firearms were displayed; Perricone sat in the chair next to the door; "the door could be unlocked[;] and he could have at any time exited completely unmolested". Perricone fails to show the requisite clear error in the court's finding he was not restrained.  *See United States v. Coulter*, 41 F.4th 451, 460 (5th Cir. 2022) ("Indeed, [s]ome *significant* restraint of freedom of movement must have occurred.  For example, this court [in *United States v. Ortiz*, 781 F.3d 221, 224–25, 232–33 (5th Cir. 2015)] determined that a suspect was not in *Miranda* custody even though officers approached him with their guns drawn and handcuffed him for five to ten minutes before removing the handcuffs and initiating questioning." (first alteration in original) (emphasis in original) (citations omitted)).

Finally, for the agents' statements regarding Perricone's freedom to leave, Perricone asserts the statements (that the interview was voluntary, could be terminated by him, and he was not under arrest) were ineffective because of his learning (later in the interview) that the agents had a search warrant and were there to talk about child pornography.  For Perricone's knowledge-of-the-true-purpose contention, he cites no authority for why this fact would change his perception of his freedom to leave.  Informing him about the search warrant, however, could influence that perception.  *See Bengivenga*, 845 F.2d at 597 n.16.  Nevertheless, the agents reiterated several times that the interview was voluntary.  *See United States v. Michalik*, 5 F.4th 583, 589 (5th Cir. 2021) (concluding "fifth factor indicate[d] that the interview was not custodial" because agents repeatedly told defendant "he was not under arrest and was free to leave"), *cert. denied*, 142 S. Ct. 910 (2022); *Coulter*, 41 F.4th at 461 ("Informing a suspect he is not under arrest,

[even without] explicitly tell[ing] him he [is] free to leave[,] . . . . would [also] suggest to a reasonable person that he [is] free to leave[.]" (alterations in original) (citation omitted)).

ii.

For the second *Miranda* step, and as noted *supra*, "[t]his Court must determine whether the relevant environment . . . presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*". *Rafoi*, 60 F.4th at 1006 (citation omitted).  The district court did not reach this part of the analysis, nor did Perricone include it in his suppression motion.  Accordingly, the contention is likely forfeited.  *See, e.g.*, *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court".); *United States v. Ortega*, 93 F.4th 278, 282 (5th Cir. 2024) (noting Government's "argument is likely forfeited" because contention was never presented to district court).  In any event, the environment was not "inherently coercive" as in *Miranda* because Perricone was interviewed in a building on the premises of his workplace and was repeatedly reminded the interview was voluntary.  *See Howes*, 565 U.S. at 511 ("When a person is *arrested* and taken to a station house for interrogation, the person who is questioned may be pressured to speak by the hope that, after doing so, he will be allowed to leave and go home." (emphasis added)); *Rafoi*, 60 F.4th at 1006–07 (discussing station-house environment).

Perricone fails to show the requisite clear error in the court's fact findings or legal error in its ruling he was not in custody.  *See id.* at 1002 (outlining standard).

b.

Regarding the court's denying the suppression motion concerning his FBI-office statements, Perricone asserts they were involuntary and resulted

11

from an impermissible two-step strategy prohibited by *Seibert*, 542 U.S. at 621 (Kennedy, J., concurring in judgment) (plurality opinion) ("The post[-*Miranda*-]warning interview resembled a cross-examination. The officer confronted the defendant with her inadmissible prewarning statements and pushed her to acknowledge them."). *See United States v. Fernandez*, 48 F.4th 405, 410 (5th Cir. 2022) ("*Seibert* requires the suppression of a post-warning statement only where a deliberate two-step strategy is used and no curative measures are taken." (citation omitted)). (Perricone asserts, to preserve for possible further review, that the *Seibert* plurality opinion is controlling, not Justice Kennedy's concurrence. *See United States v. Courtney*, 463 F.3d 333, 338 (5th Cir. 2006) ("[Our court] find[s] *Seibert*'s holding in Justice Kennedy's opinion concurring in the judgment.").)

Because Perricone fails to show he was in custody at any time before his arrest, *Seibert* does not apply. *See id.* at 336–37 ("*Seibert* only applies if the first statements were obtained in violation of *Miranda*".). Additionally, "[n]othing in the circumstances surrounding [Perricone]'s post-*Miranda* statements suggests he was coerced". *United States v. Lim*, 897 F.3d 673, 692 (5th Cir. 2018) ("[A] statement is involuntary . . . if the tactics employed by law enforcement officials constitute a Fifth Amendment due process violation and are so offensive to a civilized system of justice that they must be condemned." (alterations in original) (citation omitted)).

## B.

In challenging his sentence, Perricone maintains: the court procedurally erred by applying the Guideline § 2G2.2(b)(5) five-level enhancement because it was based on acquitted conduct not supported by reliable evidence, *i.e.*, the 2009 polygraph report; and that report did not support the requisite "pattern" of abuse for the enhancement. (Perricone also asserts, to preserve for possible further review, that being sentenced

based on acquitted conduct violates the Fifth Amendment Due Process Clause and the Sixth Amendment's right to trial by jury. *See United States v. Landreneau*, 967 F.3d 443, 454 (5th Cir. 2020) (permitting court to consider acquitted conduct "as long as it finds that the conduct occurred by a preponderance of the evidence").)

Although post-*Booker*, the Guidelines are advisory only, the district court must avoid significant procedural error, such as improperly calculating the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 46, 51 (2007). If no such procedural error exists, a properly preserved objection to an ultimate sentence is reviewed for substantive reasonableness under an abuse-of-discretion standard. *Id.* at 51; *United States v. Delgado-Martinez*, 564 F.3d 750, 751–53 (5th Cir. 2009). In that respect, for issues preserved in district court, its application of the Guidelines is reviewed *de novo*; its factual findings, only for clear error. *E.g.*, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

This contested enhancement is reviewed for clear error. *See United States v. Lawrence*, 920 F.3d 331, 337 (5th Cir. 2019) ("[Whether] [t]he government has [met] the burden of proving [an enhancement]'s applicability by a preponderance of the evidence . . . [is a] fact-intensive inquiry . . . subject to clear-error review".). "Clear error will not be found on appeal if the district court's finding is plausible in light of the entire record. Additionally, if there are two permissible views of the evidence, the factfinder's choice between them will not be deemed clearly erroneous." *Landreneau*, 967 F.3d at 451 (citation omitted).

As noted *supra*, the five-level enhancement applies if defendant "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor". Guideline § 2G2.2(b)(5). "Pattern of activity" means "any combination of two or more separate instances of the sexual abuse or sexual

exploitation of a minor". *Id.* cmt. n.1; *see also Landreneau*, 967 F.3d at 453 (outlining standard for "[s]exual abuse or exploitation").

For the required "two or more separate instances", the PSR recommended the enhancement based on an arrest in 2009 and another in 2011, stemming from the same victim's accusations of sexual assault on several occasions. The PSR's factual summary of these arrests discussed, *inter alia*, two specific incidents from 1998 and 2004 involving the same minor: Perricone's then-wife's half-sister. The victim was between the ages of seven and 16 during the several above-described instances of abuse claimed by the victim. Further, as discussed *supra*, the PSR recounts the agents discovering (while executing the search warrant at Perricone's residence on 25 January 2018) the 2009 polygraph report where, after failing the examination, Perricone verbally admitted, *inter alia*, to digitally penetrating the minor's vagina.

In his pre-sentencing, written objection to the PSR's recommended enhancement, Perricone highlighted that he "was acquitted of all allegations in 2009" and maintained that this "acquittal[] [was] insufficient to trigger [the] enhancement". He expanded that at sentencing to "object to the use of all acquitted conduct". At sentencing, he also asserted the Government had not met the preponderance-of-the-evidence standard employed at sentencing. *E.g.*, *United States v. Abrego*, 997 F.3d 309, 312 (5th Cir. 2021). The Government asserted it had done so with the victim's trial testimony from: Perricone's previous criminal trial (the 2009 and 2011 charges were tried together in 2011); her civil deposition testimony from a 2017 custody dispute between Perricone and his then-wife over their daughter; and the 2009 post-polygraph examination statements.

The court refused to rely on the "cold" trial transcript of the victim's testimony when the jury found in 2011 that this testimony, *inter alia*, did not

meet the higher beyond-a-reasonable-doubt standard for a conviction. It also refused to rely on the deposition transcript because Perricone would have been entitled to a continuance of the sentencing in order to have "the opportunity to rebut portions of that civil testimony with other portions of the civil testimony that may exist". Along that line, the court did not want to continue the sentencing because the attendees at sentencing needed resolution and finality.

Accordingly, in overruling the objection, the court relied solely "on the polygraph[] examiner's statements [in 2009] where he attributes the defendant making an admission to touching the victim". The court adopted the PSR.

"When making factual findings at the sentencing stage, a district court may consider any information that bears sufficient indicia of reliability to support its probable accuracy. Findings of fact for sentencing purposes need only be established by a preponderance of the evidence." *Landreneau*, 967 F.3d at 451 (citations omitted).

"A district court commits procedural error in sentencing a defendant based on information that does not have sufficient indicia of reliability." *Id.* at 453. "[A] [PSR] generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations required by the sentencing guidelines." *Id.* at 451 (alterations in original) (citation omitted). "As a result, a district court may adopt facts contained in a PSR without further inquiry, assuming those facts have an adequate evidentiary basis that itself is sufficiently reliable and the defendant does not present evidence to the contrary." *Id.* (citation omitted). "The defendant carries the burden of presenting rebuttal evidence to show that those facts within the PSR are materially untrue, inaccurate, or unreliable.

But, any objections, unsupported by facts, generally do not carry this burden." *Id.* (citation omitted).

1.

Perricone contested the 2009 polygraph report's reliability in his first motion *in limine*. But at sentencing, he only contended the acquitted conduct from the 2011 trial was insufficient to meet the requisite preponderance-of-the-evidence standard. *See id.* at 454 ("A district court may consider conduct not resulting in a conviction (and even conduct resulting in an acquittal) when applying sentencing enhancements as long as it finds that the conduct occurred by a preponderance of the evidence.").

He, therefore, arguably failed to preserve this polygraph-report-unreliability contention. *See, e.g.*, *United States v. Zarco-Beiza*, 24 F.4th 477, 481–82 (5th Cir. 2022) (concluding insufficient objection to preserve bare-arrest-record assertion); *United States v. Rodriguez-Leos*, 953 F.3d 320, 324–26 (5th Cir. 2020) ("If a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court." (citation omitted)); *United States v. Hernandez-Montes*, 831 F.3d 284, 290 (5th Cir. 2016) (requiring objection to be "sufficiently specific"). In any event, he fails to show why his post-polygraph-examination statements recorded by a third-party polygraph examiner hired by Perricone's counsel would lack the requisite sufficient indicia of reliability. *See, e.g.*, *United States v. Walker*, No. 21-50429, 2022 WL 175536, at *1 (5th Cir. 18 Jan. 2022) ("[T]he court did not [plainly] err in relying on [defendant]'s unchallenged post-polygraph statements contained in the [PSR]".).

2.

Perricone also asserts the court clearly erred in finding he engaged in the requisite two or more instances of abuse to constitute a pattern. *See*

Guideline § 2G2.2(b)(5) cmt. n.1. The Government asserts the record supports a plausible finding because the PSR states, *inter alia*, he assaulted the victim on several occasions between the relevant ages. *See Landreneau*, 967 F.3d at 449 ("A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." (citation omitted)).

Accordingly, at issue is whether the court clearly erred in finding Perricone engaged in the requisite two or more instances of abuse. *See id.* at 451, 455. The 2009 post-polygraph statements are ambiguous for the frequency of abuse: "He then admitted he touched her, he penetrated her vagina, and he had an erection as a result". The PSR describes the abuse as occurring "on several occasions" and outlines two specific similar instances of abuse (in 1998 and 2004), which are both plausibly supported by these statements. Additionally, Perricone failed to offer any evidence to rebut the PSR's description of his statements. *See id.* (discussing defendant's burden to offer rebuttal evidence). Accordingly, we are not left "with the definite and firm conviction that a mistake has been committed" necessary for clear error. *United States v. Johnson*, 14 F.4th 342, 349 (5th Cir. 2021) (citation omitted).

## III.

For the foregoing reasons, the judgment is AFFIRMED.