United States Court of Appeals
for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 31, 2024

Lyle W. Cayce
Clerk

_____

No. 23-30444

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Terrell Moore,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CR-32-6

_____

Before King, Stewart, and Higginson, *Circuit Judges*.

Per Curiam:\*

Terrell Moore pleaded guilty to attempted Hobbs Act robbery, conspiracy to possess with the intent to distribute marijuana, using firearms in furtherance of a drug-trafficking crime, and conspiracy to possess firearms in furtherance of a drug-trafficking crime. Following his guilty plea, the presentence investigation report ("PSR") characterized Moore's offenses under Count 4 as the attempted murders of seven victims. Consequently, the

_____

\* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

district court applied the attempted first-degree murder guideline under U.S.S.G. § 2A2.1 and sentenced Moore to a total of 330 months of imprisonment in addition to five years of supervised release. For the following reasons, we AFFIRM the district court's judgment.

## BACKGROUND

### I.    Factual Background

Around midnight on December 27, 2020, Tiquan Everson, Blake Batiste, Chris Ross, and Trejon Howard entered Room 1514 of the Jung Hotel in New Orleans, Louisiana, to purchase marijuana from seven alleged drug dealers. Hotel security footage showed that the four men left the hotel shortly thereafter and drove to a residence in New Orleans East. On the way, they devised a plan to return to the hotel room to rob the seven alleged drug dealers of their drugs and drug proceeds. They enlisted Terrell Moore and Darius Dannel to assist them with the robbery.

Armed with semiautomatic handguns, Moore and the five other men entered the Jung Hotel and proceeded to Room 1514 at approximately 1:11 a.m. Shortly after the door to Room 1514 was opened, the six men "started shooting at the [seven] individuals inside the room," who then fired their weapons in return. Moore and the five men accompanying him fled down the hallway to the elevator, continuing to fire their weapons, while the seven alleged drug dealers from Room 1514 returned gunfire. Over 80 shots were fired in the hallway during the shootout. There were no fatalities, but Ross was "shot in the backside by friendly fire," Everson was shot in the arm, and one of the alleged drug dealers from Room 1514 (Malik Fernandez) was shot in the chest.

## II.   *Procedural Background*

Moore was charged in a superseding indictment with attempted Hobbs Act robbery in violation of 18 U.S.C. §§ 1951, 1952 (Count 1), conspiracy to possess with the intent to distribute marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(D) (Count 2), using firearms in furtherance of a drug-trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 924(c)(2) (Count 3), and conspiracy to possess firearms in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(o) (Count 4).[1] The superseding indictment alleged that the drug conspiracy in Count 2 was the predicate drug-trafficking crime for the § 924(c) and § 924(o) charges in Counts 3 and 4.[2] Moore pleaded guilty to Counts 1, 2, 3, and 4.

In computing Moore's offense level, the PSR characterized his "underlying offenses" under Count 4 as the attempted murders of the seven alleged drug dealers in Room 1514. Accordingly, the PSR applied the attempted first-degree murder guideline under U.S.S.G. § 2A2.1(a)(1) pursuant to U.S.S.G. §§ 2K2.1 and 2X1.1, resulting in a base offense level of 33. After applying several adjustments, the PSR calculated a total offense level of 37 that, together with a criminal history category of I, yielded a guidelines range of 210 to 262 months of imprisonment. The PSR recognized, however, that the statutory maximum restricted the top end of the range to 240 months for Counts 1 and 4 and to 60 months for Count 2. It further noted

---

[1] Although Counts 3 and 4 originally alleged that those firearm offenses were done in furtherance of a "crime of violence," the district court removed the "crime of violence" language from those counts. *See United States v. Taylor*, 596 U.S. 845 (2022).

[2] Although the superseding indictment originally alleged that the attempted Hobbs Act robbery in Count 1 also served as a predicate offense for the charges in Counts 3 and 4 that allegation was later stricken from the superseding indictment.

that the guidelines range for Count 3 was the mandatory minimum of 120 months of imprisonment, to run consecutively to the rest of the sentence.

Moore filed an objection to the PSR, arguing that the proper underlying offense was attempted Hobbs Act robbery[3] and therefore the attempted-murder guideline was not applicable. In support of his objection, he asserted that he did not intend to commit an attempted murder, as he "never entered the hotel room" and instead "was fleeing from the gunshots from the drug dealers who were seeking to protect their product and proceeds." For these reasons, he argued that § 2B3.1, rather than § 2A2.1, applied.

At the sentencing hearing and in response to Moore's objection, the Government called Guy Swalm, a taskforce officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives. Swalm was the lead case agent in the investigation of the shootout at the Jung Hotel. During Swalm's testimony, the Government played the security video footage of the shootout. Swalm also testified that it was Moore who shot Ross, his own associate, in the buttocks in the elevator. In addition, Swalm testified that Fernandez, one of the occupants of Room 1514, was shot in the chest during the shootout. During his cross-examination, Swalm acknowledged that he was not able to "connect [any casings] with any particular weapons," and that the encounter between Moore's crew and the drug dealers lasted only "seconds."

Following Swalm's testimony, Moore argued that § 2A2.1 was not applicable because the object of his offense was a robbery, not attempted

---

[3] The Hobbs Act defines robbery as the (1) unlawful taking of personal property from (2) another person or in their presence (3) against their will, (4) by force and violence, threats, or fear of injury. *See* 18 U.S.C. § 1951(b)(1).

murder. He also emphasized that he had not pleaded guilty to attempted murder. The district court acknowledged that defense counsel for Dannel and Moore had "raise[d] a good point" regarding "whether or not there was malice aforethought" and then asked for the Government's response. The Government responded that "there is no difference" between "the facts of this case" and a felony murder that occurs during a bank robbery because "[a]ggressors don't get to claim self-defense." The Government further contended that:

> [I]f you didn't want to kill anybody[,] and you really want to protect everybody, you can go and rob them without any guns.

> But once you start arming yourself with a weapon to go rob somebody, you are forming the intent that I might need this weapon. It was important what defense counsel said a few minutes ago, because you asked them that question, why did these guys arm themselves? Well, Ross and the other three individuals had been there earlier. And what did they see? They saw the drug dealers up there, not with just drugs and money, . . . they also saw the AR-15's and other weapons.

The Government concluded by urging that there was not

> any doubt that [if the defendants] shot and killed someone, either one of the drug dealers who was in the room or . . . a little baby sleeping across the hallway in a bassinet in somebody's bedroom or if a couple was sleeping right across the hallway on their honeymoon or anniversary, this would be a first-degree murder because it would be a killing during the course of a robbery.

The district court overruled Moore's objection, concluding that the PSR appropriately applied § 2A2.1. In doing so, the district court acknowledged that "the underlying motive" was robbery, but highlighted that Moore knew he was bringing weapons "to intimidate" the drug dealers

and to use the weapons "in the event that the drug dealers would have opened up with their weapons." The court reasoned:

> It's true [the defendants] were not specifically charged with attempted murder, but when you look at the actual charges of using those weapons and the means in which they used them to commit the robbery, again, the totality of the facts, it's clear that they all intended to use those weapons and take the drugs and proceeds from the drug dealers by force.

> And they were not hesitant to use those weapons, as shown in the video, continuously, from the room, down the hallway, and then leading down another hallway to the elevator and even while in the elevator, from the cameras in those two hallways and the camera in the elevator and also their admissions to the [c]ourt and in the factual basis documents.

On this basis, the district court determined that "several guns were intentionally discharged, and the victims were intentionally shot with malice aforethought during the course of [the] robbery and the drug-trafficking crime."

The district court ultimately sentenced Moore to a total of 330 months of imprisonment, which was comprised of 210 months for Counts 1 and 4 to run concurrently, 60 months for Count 2 to run concurrently with the sentence for Counts 1 and 4, plus 120 months for Count 3 to run consecutively to the sentences on the other counts. The district court also sentenced Moore to five years of supervised release. Moore filed a timely notice of appeal. *See* Fed. R. App. P. 4(b)(1)(A)(i).

## STANDARD OF REVIEW

This court reviews the district court's interpretation and application of the Guidelines de novo and its factual findings for clear error. *United States v. Gomez-Alvarez*, 781 F.3d 787, 791 (5th Cir. 2015); *see United States v. Hicks*,

389 F.3d 514, 529 (5th Cir. 2004) (reviewing de novo the district court's application of the cross-reference provisions of § 2K2.1(c)). "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." *United States v. Landreneau*, 967 F.3d 443, 449 (5th Cir. 2020) (citation omitted). The Government has the burden of showing, by a preponderance of the evidence, the facts necessary to support the cross-reference to § 2A2.1 and the elevated base offense level in § 2A2.1(a)(1). *See United States v. Luna-Gonzalez*, 34 F.4th 479, 480 (5th Cir. 2022); *see also United States v. Paul*, 274 F.3d 155, 164 (5th Cir. 2001) (noting that the Government has the burden of demonstrating that a Guidelines cross-reference is applicable).

## DISCUSSION

Moore raises one assignment of error on appeal. He contends that the district court erred in adding seven levels to his offense level by (1) using the cross-reference of U.S.S.G. § 2A2.1, (2) determining that the object of his offense was attempted first-degree murder, and (3) failing to find he had specific intent to kill as required by § 2A2.1. We address Moore's arguments in turn.

### 1. *Cross-Reference under U.S.S.G. § 2A2.1*

On appeal, Moore contends that the district court clearly erred when calculating his offense level because it treated his offense as seven attempted murders.[4] Moore further contends the district court should have applied § 2B3.1, the guideline for Hobbs Act robbery, rather than § 2A2.1(a)(1),

---

[4] Moore has waived this issue on appeal through inadequate briefing because he does not cite any provision in Chapters One or Three of the Guidelines, nor does he brief any argument regarding improper grouping. For these reasons, we do not address it herein. *See United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006) ("Inadequately briefed issues are deemed abandoned.").

because the Hobbs Act robbery was his "primary charge." According to Moore, the district erred in applying the first-degree attempted murder guideline because he pleaded guilty to an attempted Hobbs Act robbery, not an attempted murder. We disagree.

To begin, the record does not indicate that the Hobbs Act robbery was Moore's primary offense because he pleaded guilty to multiple charges, including conspiracy to possess firearms in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(o) (Count 4). Further, the guideline applicable to that offense is § 2K2.1. *See* U. S. S. G. § 1B1.2(a). Section 2K2.1(c) contains a cross-reference providing that "[i]f the defendant used or possessed any firearm . . . in connection with the . . . attempted commission of another offense," then the court is to "apply . . . § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater." *Id.* § 2K2.1(c)(1)(A). Section 2X1.1, then, instructs courts to impose "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." *Id.* § 2X1.1(a); *see id.* § 2X1.1 cmt. n.2. After considering a reduction for partially completed offenses in § 2X1.1(b), district courts then consider a cross-reference in § 2X1.1(c), which states that, "[w]hen an attempt . . . is expressly covered by another offense guideline section," that specific guideline section is to be applied. § 2X1.1(c)(1).

The Guidelines further specify that one offense can establish "another offense," triggering the application of the cross-reference under § 2K2.1(c)(1) "regardless of whether a criminal charge was brought, or a conviction obtained." § 2K2.1 cmt. n.14(C); *see United States v. Lopez*, 70 F.4th 325, 328–29 (5th Cir.), *cert. denied*, 144 S. Ct. 318 (2023). *Id.* Section 2K2.1(c)(1) then requires the district court to decide if the firearm was used

in connection with relevant conduct amounting to the commission or attempted commission of another offense.

"Relevant conduct" refers to an action deriving from "the same course of conduct" or a "common scheme or plan" as the offense of the conviction. U. S. S. G. § 1B1.3(a)(2). The enhancement applies even if the firearm used for the increase is not the same firearm used in the offense. U. S. S. G. § 2K2.1, cmt. (n.14(E)(ii)). Further, a "defendant need not have been convicted of, or even charged with, the other offenses for them to be considered relevant conduct for sentencing[.]" *United States v. Rhine*, 583 F.3d 878, 885 (5th Cir. 2009).

A "common scheme or plan" has related offenses if those offenses are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." § 1B1.3, cmt. (n.5(B)(i)); *see Rhine*, 583 F.3d at 885. "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other," *United States v. Brummett*, 355 F.3d 343, 45 (5th Cir. 2003), and are deemed "part of a single episode, spree, or ongoing series of offenses," § 1B1.3, cmt. (n.5(B)(ii)). The three factors to be considered are (1) "the degree of similarity of the offenses," (2) "the regularity (repetitions) of the offenses," and (3) "the time interval between the offenses." § 1B1.3, cmt. (n.5(B)(ii)); *see Rhine*, 583 F.3d at 886.

A district court's findings on the relevant conduct factors are factual and thus this court reviews those findings for clear error. *See Rhine*, 583 F.3d at 885; *Brummett*, 355 F.3d at 345. Here, Moore used a firearm "in connection with . . . another offense"—*id.* § 2K2.1(c)(1)(A)—because, at a minimum, he used a firearm in connection with the attempted Hobbs Act robbery to which he pleaded guilty. *See United States v. Garcia-Gonzales*, 714

F.3d 306, 314 (5th Cir. 2013) (holding that the application of the Guidelines can be affirmed "on any ground supported by the record"). Therefore, the district court did not err in applying § 2K2.1(c)(1)'s cross-reference to § 2X1.1.

Regarding the district court's calculation of Moore's offense level, the commentary to the Guidelines denotes several guidelines that expressly cover attempts, including § 2A2.1, which addresses assault with intent to commit murder and attempted murder. § 2X1.1, cmt. n.1. Section 2A2.1(a) sets a base offense level of 33 "if the object of the offense would have constituted first degree murder," or a base offense level of "twenty-seven, otherwise." The commentary defines "first degree murder" as "conduct that . . . would constitute first degree murder under 18 U.S.C. § 1111." *Id.* § 2A2.1, cmt. n.1. The offense guideline also provides for several enhancements that rely on, for example, whether the use of the firearm resulted in serious bodily injury. *Id.* § 2A2.1(b). As for the grouping offenses, § 1B1.2(d) provides that a conviction on a count "charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." Under § 3D1.2, all offenses in Chapter Two, Part A, which would include § 2A2.1, are specifically excluded from grouping. § 3D1.2.

Here, under U.S.S.G § 2K2.1(c) and § 2X1.1(c), the district court applied the guideline for attempted first-degree murder under § 2A2.1(a)(1), resulting in a base offense level of 33. The district court also properly applied a two-level enhancement for serious bodily injury because Fernandez was shot in the chest, and it was further entitled to count each alleged murder attempt of the alleged seven drug dealers separately under U.S.S.G. § 1B1.2(d) and § 3D1.2. Therefore, the district court's guideline calculations were supported by the record.

For these reasons, we hold that the district court did not err by cross-referencing the attempted first-degree murder guideline under U.S.S.G. § 2A2.1(a)(1) when computing Moore's offense level.

### 2. *Object of Moore's Offense.*

Moore also complains that the district court's improper application of § 2A2.1 elevated his base offense level to 33, resulting in an unsupported, excessive sentence. He also complains that the object of his offense was an attempted robbery, not an attempted murder. Consistent with that assertion, he admitted in his factual basis that he entered the Jung Hotel while armed so that he could rob the occupants of Room 1514 of their drugs and drug proceeds. Moreover, he asserts that § 2A2.1 does not apply to attempted Hobbs Act robbery under 18 U.S.C. § 1951. *See* U.S.S.G. App. A (Statutory Index). Moore's argument is unpersuasive.

The attempted first-degree murder guideline provides that it only applies "if the object of the offense would have constituted first degree murder." *Id.* § 2A2.1(a)(1). When a district court is determining what constitutes "the object of the offense," an offense can constitute "another offense" for purposes of § 2K2.1(c)(1) "regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1 cmt. n.14(C); *see, e.g.*, *Lopez*, 70 F.4th at 328-29.

Regarding factual findings, such as determining the object of the offense, "district courts 'may consider any information which bears sufficient indicia of reliability to support its probable accuracy.'" *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (quoting *United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002)). "Generally, a PSR 'bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations.'" *Id.* (quoting *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010)).

Here, the district court, by a preponderance of the evidence, properly held that "the object of [Moore's] offense" was attempted murder. This finding was proper because under § 2X1.1(c)'s cross-reference to § 2A2.1(a)(1) the district court is required to apply the attempted-murder guideline when the object of the offense aligns with attempted murder, which it did here due to Moore's act of firing his firearm. *See id.* § 2X1.1 cmt. n.1. The district court's finding was also consistent with the factual basis given that Moore admitted to having fired his weapon at the drug dealers during the offense. Furthermore, the district court's decision was adequately supported by the record considering that it relied on multiple sources of credible evidence, including the PSR, Swalm's testimony, and the Government's video evidence. *See e.g., Harris*, 702 F.3d at 230; *Nava*, 624 F.3d at 231. For these reasons, we hold the district court did not clearly err in determining that "the object of [Moore's] offense" was attempted first-degree murder. *See Gomez-Alvarez*, 781 F.3d at 791.

### 3. *§ 2A2.1's Requisite Mental State.*

Finally, Moore contends that the district court erred by applying § 2A2.1 because it failed to determine that he held the requisite mens rea to commit attempted murder, which is the specific intent to kill. We agree with Moore that § 2A2.1 requires a specific intent to kill; however, we disagree with Moore that the district court failed to find it here.

The commentary to § 2A2.1 defines "[f]irst degree murder" as "conduct that . . . would constitute first degree murder under 18 U.S.C. § 1111." U.S.S.G. § 2A2.1 cmt. n.1. The relevant statute here, 18 U.S.C. § 1111(a), provides that, "[m]urder is the unlawful killing of a human being with malice aforethought." The statute further specifies that "any . . . kind of willful, deliberate, malicious, and premeditated killing; or [murder] committed in the perpetration of, or attempt to perpetrate,

any . . . robbery . . . is murder in the first degree." *Id.* Put another way, "[f]irst degree murder under § 1111 clearly requires the criminal intent of premeditation and malice aforethought." *United States v. Harrelson*, 754 F.2d 1153, 1172 (5th Cir. 1985); *see also Braxton v. United* States, 500 U.S. 344, 351 n.* (1991) ("Although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill.").[5]

Under the Guidelines, §§ 2X1.1 and 2A2.1's commentaries state that § 2A2.1(a)(1) covers attempted crimes. U.S.S.G. § 2X1.1 cmt. n.1 (referencing § 2A2.1 as one of the "guidelines that expressly cover[s] attempts"); *see id.* § 2A2.1 cmt. bkgd. ("This section applies to the offenses of assault with intent to commit murder and attempted murder."). Additionally, when a statute does not stipulate the elements of attempted murder, those elements assume their common law understanding. *See Morissette v. United States*, 342 U.S. 246, 263 (1952) (holding that when Congress uses "terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster

---

[5] While this court has not published an opinion on this issue, every circuit that has reached the issue of whether specific intent applies to § 2A2.1 has found that it does. The Sixth and Eighth Circuits have concluded a district court must find that the defendant possessed the specific intent to kill to apply the attempted-murder guideline under § 2A2.1. *See, e.g., United States v. Miller*, 73 F.4th 427, 430 (6th Cir. 2023); *United States v. Angel*, 93 F.4th 1075, 1079 (8th Cir. 2024). The Second, Third, and Eleventh Circuits have reached the same conclusion in unpublished opinions. *See, e.g., United States v. Passley*, No. 22-1361, 2023 WL 8921150, at *1-2 (2d Cir. Dec. 27, 2023) (unpublished); *United States v. Murillo*, 526 F. App'x 192, 195 (3d Cir. 2013) (unpublished); *United States v. Starr*, 717 F. App'x 918, 921-25 (11th Cir. 2017) (unpublished). Published opinions in the Seventh, Ninth, and Eleventh Circuits also support this interpretation. *See, e.g., United States v. Turnipseed*, 47 F.4th 608, 614-15 (7th Cir. 2022); *United States v. Mathews*, 36 F.3d 821, 823 (9th Cir.), *supplemented*, 37 F.3d 1507 (9th Cir. 1994); *United States v. Mock*, 523 F.3d 1299, 1303-04 (11th Cir. 2008); *see also United States v. Howald*, 104 F.4th 732, 742 (9th Cir. 2024) (explaining in a categorial analysis of 18 U.S.C. § 249(a) that, under *Braxton*, "[t]he use of the word 'attempt' in a criminal statute implicates specific intent even when the statute did not contain an explicit intent requirement" (cleaned up)).

of ideas that were attached to each borrowed word in the body of learning from which it was taken"). Attempts, as understood at common law, consist of "(1) an intent to do an act or to bring about a certain consequence which would in law amount to a crime; and (2) an act in furtherance of that intent." *See* 2 W. LaFave, *Substantive Criminal Law* § 11.3 (3d ed. 2022) (LaFave). Specifically, attempted murder requires "the specific intent of . . . completing the commission of [murder]." *United States v. Smith*, 957 F.3d 590, 595. The Supreme Court and this court agree that the requisite mens rea for attempted murder is specific intent. *See Smith*, 957 F.3d at 594–95 (citing *Braxton*, 500 U.S. at 349). For these reasons, we agree that § 2A2.1 requires a specific intent to kill.

Regarding the district court's factfinding ability at sentencing, the district court is permitted to "draw reasonable inferences" when it determines whether the record supports the sentence enhancement, "by a preponderance of the evidence." *United States v. Myers*, 772 F.3d 213, 220 (5th Cir. 2014). The district court may also "make implicit findings" of fact "by adopting the PSR." *United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994).

Here, the district court adopted the PSR, which "maintains that the first-degree murder guideline is properly applied, as there appears to be sufficient information to support the necessary finding of malice aforethought and premeditation." *See Harris*, 702 F.3d at 230. Upon adopting the findings in the PSR, the district court further observed that: (1) Moore "became aware of and agreed to participate in the armed robbery of drug dealers at the Jung Hotel"; (2) he "knew the scope of the activity" and "the legality of it"; (3) he "had known [the drug dealers] had firearms"; (4) although the "underlying motive" was robbery, Moore "kn[e]w that those weapons [were] being brought to intimidate as well as to be used in the event

that the drug dealers would have opened up with their weapons"; (5) the evidence revealed Moore and his associates were "shooting to either kill or inflict serious injury on others"; (6) under "the totality of the facts, it's clear that they all intended to use those weapons and take the drugs and proceeds from the drug dealers by force"; (7) the video evidence showed Moore and his associates "were not hesitant to use those weapons, . . . continuously, from the room, down the hallway, and then leading down another hallway to the elevator and even while in the elevator"; and most importantly, (8) "several guns were intentionally discharged, and the victims were intentionally shot with malice aforethought during the course of [the] robbery and the drug-trafficking crime". Therefore, at minimum, the district court made an implicit finding of specific intent based on the "record as a whole" as it was entitled to do under the Guidelines and circuit precedent. *See*, *e.g.,* *Landreneau*, 967 F.3d at 448 (citation omitted). For these reasons, we hold that the district did not clearly err in holding that Moore possessed the specific intent to kill for the purposes of applying the attempted first-degree murder guidelines under § 2A2.1.

## CONCLUSION

For the reasons provided herein, we AFFIRM the district court's judgment.